COMMISSIONERS OF THE TAXING DISTRICT OF BROWNSVILLE *v.* LOAGUE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TENNESSEE.

No. 1445. Submitted January 4, 1889. — Decided March 5, 1889.

Mandamus lies to compel a party to do that which it is his duty to do; but it confers no new authority, and the party to be compelled must have the power to perform the act.

If a petitioner for a writ of mandamus to compel the levy of a tax to pay a debt evidenced by a judgment recovered on coupons of municipal

bonds is obliged to go behind the judgment in order to obtain his remedy, and it appears that the bonds were void and that the municipality was without power to tax to pay them, the principle of *res judicata* does not apply upon the question of issuing the writ.

When application is made to collect judgments by process not contained in themselves, and requiring, in order to be sustained, reference to the alleged cause of action on which they are founded, the aid of the court should not be granted when upon the face of the record it appears, not that mere error supervened in the rendition of such judgments, but that they rest upon no cause of action whatever.

THE court, in its opinion, stated the case as follows:

This is a writ of error to the Circuit Court of the United States for the Western District of Tennessee, bringing under review the judgment of that court awarding a peremptory mandamus in favor of John Loague, administrator of R. D. Baker, deceased, against the Board of Commissioners of the Taxing District of the city of Brownsville, Tennessee, to proceed "to levy and collect and pay over to petitioner a tax sufficient to pay each and all" of certain judgments described in the petition for such mandamus.

The petition was filed March 19, 1886, and set forth that Baker was in his lifetime the owner and holder for value of certain coupons representing interest on certain bonds issued by the city of Brownsville, Tennessee, under an act of the General Assembly of that State, passed February 8, 1870, (being the act referred to in the foregoing cause of *Norton* v. *The Board of Commissioners &c.*; No. 1442, *ante*,) upon which he obtained four judgments against said city, in said court, namely: one March 1, 1876, for $2628 and costs of suit; another December 20, 1876, for the sum of $822.50 and costs; another December 21, 1877, for the sum of $822.66 and costs; another on the 14th day of December, 1878, for the sum of $821.60 and costs; that executions were issued on all of said judgments, upon which returns of *nulla bona* were made, and thereupon said Baker instituted proceedings on three of said judgments to compel by mandamus the levy and collection of a tax to satisfy said judgments and costs; which resulted in the collection of $1200 on the first judgment, and an unavail-

ing assessment and levy on the second, and perhaps on the third; but that, except as to the amount aforesaid, all of said judgments remained unpaid; that on the 24th of February, 1879, the General Assembly of Tennessee repealed the charter of the city of Brownsville, but provided in the repealing act that it should "not be so construed as to impair the obligation of existing contracts into which said corporation has heretofore entered." That by an act of the General Assembly of Tennessee, approved March 14, 1879, it was provided that the Governor of the State should appoint an officer for the corporations whose charters had been repealed, to be known as a receiver and back-tax collector, whose duty it should be to collect all back taxes of such municipalities remaining uncollected at the repeal of their charters; that such officer was appointed for Brownsville but did not qualify, and it was impossible for petitioner's intestate to receive any benefit intended to be secured by the appointment and qualification of such officer; and that on the first day of April, 1881, the people and territory of the city of Brownsville were again incorporated and organized into a municipal corporation known as the Taxing District of Brownsville, under an act entitled "An act to establish taxing districts of the second class, and to provide the means of local government therefor," which is given in substance in said petition, together with certain provisions of an act amendatory thereof, passed April 4, 1885.

Reference is also made to an act of January 31, 1879, applicable to "the several communities embraced in the territorial limits of all such municipal corporations in this State, as have had, or may have, their charters abolished," and which provides, as to the commissioners and trustee constituting governing agencies, that "no writ of mandamus or other process shall lie to compel them to levy any taxes; nor shall the commissioners or said trustee, nor the local government created by this act, pay or be liable for any debt created by said extinct corporation, nor shall any of the taxes collected under this act ever be used for the payment of any of said debts," which prohibition in that act and acts amendatory thereof petitioner insists is null and void.

Petitioner avers that defendants have, under the act of April 1, 1881, and the act of April 4, 1885, power to levy and collect taxes to pay said judgments, and then says: "That the defendant corporation, the Taxing District of Brownsville, and its predecessor, the city of Brownsville, have no assets or means of payment of petitioner's judgments aforesaid, and *petitioner's only remedy to enforce the collection of his judgments is that awarded by the act authorizing the issue of the bonds from which the coupons were detached upon which said judgments were obtained,* and petitioner is advised that said remedy remains in full force against the defendants as the municipal authorities of the Taxing District of Brownsville, and can be invoked against them as effectually as it could have been against the corporate authorities of the city of Brownsville before its charter was repealed."

Petitioner prays in conclusion, together with other relief not material to be mentioned here, for an alternative writ, on hearing to be made peremptory, "commanding defendants to levy and collect a tax sufficient to pay petitioner's judgments aforesaid, and all costs on same, and all costs incurred in his mandamus proceedings heretofore had by his intestate to collect the same."

On the 27th of March, 1886, a rule to show cause was entered to which defendants appeared and moved to quash, which motion was treated by agreement as a demurrer, and subsequently the court delivered its opinion in decision of the questions thus raised, (29 Fed. Rep. 742,) a portion of which is as follows:

"Following a public policy reviewed in its application to the city of Memphis in *Meriwether* v. *Garrett*, 102 U. S. 472, the legislature of Tennessee, in 1879, inaugurated a plan of relief for insolvent municipal corporations, whereby it was expected they could escape the payment of their debts, unless the creditors would accept the 'settlements' tendered them under the provisions of the legislation. The general plan was to repeal the charters, so that there should be no officials or agencies liable to judicial compulsion by mandamus; then to apply other agencies of local government invested with all the

powers of the old municipalities, except the taxing power, which was not only withheld, but conspicuously prohibited to those new organizations called 'taxing districts.' The taxes for carrying on the new contrivances were to be levied directly by the legislature itself upon the taxables within their bounda- ries, and, that body not being amenable to any judicial coercion by mandamus, it was believed that the creditors were wholly without remedy. The legislature then provided for a settle- ment with creditors upon the general basis of refunding the old indebtedness at the half, the amount at which the State 'settles' or 'compromises' its own indebtedness. The taxes to pay the interest and principal of the new bonds, like other taxes for municipal purposes, were to be levied directly by the legislature; but provision is made that in default of such levy the 'taxing districts' may themselves levy the necessary tax. Acts 1883, c. 170, p. 224. This act applies to all 'taxing dis- tricts' of whatever class, and by its twentieth section 'repeals all laws or parts of laws in conflict herewith.' . . . The legislature repealed the defendant's charter in 1879, the judg- ments here involved being at that time unsatisfied in this court. Acts 1879, c. 27, p. 41. In 1881 the formation of 'taxing dis- tricts of the second class' was authorized, and under that act such a 'taxing district' was organized for Brownsville in 1883. Acts 1881, c. 127, p. 174. By these two acts 'commissioners' were substituted for the formerly existing 'mayor and alder- men,' with all the usual authority, legislative, executive and judicial, except the power to levy taxes, which was prohibited. But the act of 1879 especially enacted that nothing contained in it should impair the obligation of then existing contracts, and the act of 1881 'hereby levied' a tax of one dollar per hundred, one-half of which was to be applied to the current expenses and the other to the old debts. Specific power was also given to one of the 'commissioners,' called the 'secretary and financial agent,' to assess and collect this tax. The general act of 1883, already noticed, relating to all taxing districts had been passed, but by an act of 1885 the act of 1881, relating to 'taxing districts of the second class,' was amended, and § 2 gives the commissioners the most ample power to levy

taxes and appropriate money to provide for the payment of ' all the debts and current expenses of the districts.' Acts 1885, c. 82, p. 162. It is apparent that, notwithstanding the general act of 1883, and its broad repealing clause, the legislature (or rather the authors of this legislation relating to Brownsville) considered the act of 1881 as wholly unaffected by it. But by a subsequent act of 1885, at the extra session, the full powers given under the former act of that year were taken away, or rather limited to the payment of the ' compromise ' bonds only; the evident object of the last act being to correct this last careless blunder of a departure from the general plan of relief already fully commented upon. Acts extra sess. 1885, c. 10, p. 75."

The act of the extraordinary session referred to was approved June 10, 1885, and reads thus:

"SECTION 1. Be it enacted by the General Assembly of the State of Tennessee, That section 2 of an act entitled 'An Act to establish taxing districts of the second class, and to provide the means of local government therefor,' passed March 30, 1885, be so amended as to read as follows: That section 8 of said act, passed April 1, 1881, be so amended as that the Board of Commissioners, after the debts of the taxing districts shall have first been compounded between said taxing districts and creditors, shall have power by ordinance within the district to levy taxes upon all property taxable by law for state purposes, and upon all privileges and polls taxable by law for state purposes, and may appropriate the money arising from the collection of taxes so levied, after defraying the current expenses of the taxing district, to the payment of the debts of said taxing district that have been compromised; and anything in said section 2d, or in the act passed March 30, 1885, in conflict with this act is hereby repealed.

"SEC. 2. And be it further enacted, That this act take effect from and after its passage, the public welfare requiring it."

The following were among the conclusions reached and announced by the court:

"If a municipal charter be repealed and the same inhabitants and territory be reorganized into another corporation;

the latter is the successor of the former, both in the corporate obligation to pay the existing debts and those corporate powers of taxation conferred as a part of the remedy of the creditors; and any statutory prohibition of its exercise is void, under the inhibition of the Federal Constitution against impairing the obligation of contracts.

"Those agencies existing for the local government of a municipality are bound to perform such duties as are necessary to enforce the taxing power, although not especially designated for that purpose, if there be a general grant of the power of taxation to the municipality itself. This duty is implied from the general grant, whether it be conferred directly by statute upon the particular municipality or devolved upon it as the successor in corporate obligation through a grant to its predecessor. *Therefore* a *mandamus* will lie to enforce, by taxation, the payment of judgments against the original corporation, to be directed to the governmental agencies of the new corporation, they to proceed according to the general laws of the State governing the exercise of the taxing power by municipalities possessing the authority.

"Under the legislation of Tennessee repealing municipal charters and reorganizing the inhabitants into taxing districts, contrived to compel creditors to accept a compromise of their debts at reduced amounts, the prohibitions of the exercise of the taxing power by the new local governments are void, so far as relates to those grants of that power to the old corporations, which enter into contracts as a part of the remedy of creditors; and the 'taxing districts' may be compelled to exercise the power given by these original grants, by proceeding, according to the general tax laws of the State, to certify to the county court clerk the necessary rate to pay the judgment, to be extended upon the tax-books and collected as other taxes are collected. It is not necessary that the particular officials to perform this duty shall be designated in the statute, but the general grant to the corporation implies that the officials governing the municipality shall perform it, and it will be enforced by mandamus against the new commissioners who take the place of the former mayor and aldermen."

"Any taxes levied by the legislature for municipal purposes, or grants of power to a municipality to make such levies, may be repealed, if they be subsequent to the contract involved, as there is no protection under the Federal Constitution except for such powers of taxation as enter into and become a part of the contract itself and belong as a remedy to the creditor."

The demurrer having been overruled, the respondents answered, denying the possession of any power or authority to levy any tax whatever to pay judgments and indebtedness such as represented by the petitioner; and averring that the old corporation had no power or authority in law to levy a tax for such purposes, and consequently no such power or authority devolved upon the taxing district; and that the power and authority to issue the bonds and levy a tax to pay interest thereon, upon which plaintiff's suits were founded, "was given to Brownsville by the act of February 8, 1870, by the legislature of Tennessee, but before the contract was completed or the election under said act of 1870 held by Brownsville, or the bonds issued, the said act of 1870 was repealed and abrogated by the constitution of the State of Tennessee, which went into effect May 5, 1870." Respondents further alleged that the judgments were obtained by default, and that on the previous mandamus proceedings the question of want of power because of the abrogation of the act of February 8, 1870, was not raised. Motion to quash this answer or return was then made by petitioner, and the cause submitted upon such motion, together with an agreed statement of facts to the same effect as the statement in the preceding case, No. 1442, it being also stipulated that the judgments had been obtained by default, and that the question of power in the corporation to levy a tax because the act of 1870 had been abrogated by the constitution, was not raised in defence to the previous applications for writs of mandamus.

The Circuit Court held, (36 Fed. Rep. 149,) that "no defence can be made to a writ of mandamus issued upon a judgment by default against a municipal corporation which might have been made to the original suit upon the coupons," and "there-

fore where bonds issued without legislative authority were invalid, that the defendant corporation was bound by a judgment by default upon the coupons, and could not set up as a defence to the mandamus that there was no act commanding the tax to be levied, this being the same defence as the other, when it depends upon want of authority to issue the bonds, as in this case."

In the opinion of the court, although the act of February 8, 1870, was abrogated by the state constitution and the bonds were therefore void, yet judgment upon the coupons conclusively established the validity of the bonds, and so also the validity of the legislation giving the remedy by a levy of taxes for their payment.

The return of the respondent was accordingly quashed, and judgment entered awarding the peremptory writ as prayed.

*Mr. W. W. Rutledge* and *Mr. William M. Smith* for plaintiffs in error.

*Mr. Sparrel Hill, Mr. Henry Craft* and *Mr. L. P. Cooper* for defendants in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Mandamus lies to compel a party to do that which it is his duty to do without it. It confers no new authority, and the party to be coerced must have the power to perform the act.

On the 19th of March, 1886, when this petition was filed, had the Board of Commissioners the power to levy and collect taxes to pay the judgments in question?

The Circuit Court, in deciding that it had, proceeded upon the ground that the source of power was the act of February 8, 1870, and we concur in the view that there was no other. The city of Brownsville possessed no inherent power to tax, and while under an act of February 24, 1870, its inhabitants were constituted a corporation and body politic by the name and style of the "Mayor and Aldermen of the city of Browns-

ville," with power by ordinance "to levy and collect taxes upon all property, privileges and polls taxable by the laws of this State, to appropriate money, and to provide for the payment of the debt and expenses of the city," the power so vested was confined in its exercise to taxation for ordinary municipal purposes, and the payment of debts contracted in the ordinary administration of municipal affairs. Debt created by the issue of bonds in aid of railroad construction was not within the purview of the charter power, but by the act of February 8, 1870, the power to tax to pay the interest on and create a sinking fund for the redemption of the bonds authorized to be issued thereunder was expressly given.

This express grant fell with the abrogation of the act by the taking effect, on the 5th of May, 1870, of the new state constitution, and in *Norton* v. *Brownsville, ante,* 471, we have held that the bonds, upon coupons detached from which the judgments sought to be collected here were rendered, were void, not because of a defective exercise of the power to issue them, but because of a total absence of such power.

It is, however, contended that the coupons, having passed into judgments, not only is all enquiry into their validity precluded, but also any denial of the power to tax to pay them granted by the act of February 8, 1870.

As already remarked, the Circuit Court did not hold that the peremptory writ should go to command a levy to pay judgments as debts in that form, but based its order upon the inability of the respondents by reason of the judgments to assert the abrogation of the act in question.

Under the legislation between the issue of the bonds in 1870 and this application in March, 1886, authority to levy taxes to pay debts of the character represented by these judgments, when uncompromised, did not exist at the latter date, so that plaintiff was remitted, in the assertion of a right to that remedy, to the time when the bonds were issued, and as the city had then no power to tax to pay them other than that derived from the act of February 8, 1870, the relator by his pleadings opened the facts which attended the judgments

for the purpose of counting upon that act as furnishing the remedy which he sought. In this he in effect asked the court to order the levy of a tax to pay the coupons, and relied on the judgments principally as creating an estoppel upon a denial of the power to do so.

Thus invited to look through the judgments to the alleged contracts on which they are founded, and finding them invalid for want of power, must we nevertheless concede to the judgments themselves such effect, by way of estoppel, as to entitle the plaintiff *ex debito justitiæ* to a writ commanding the levy of taxes under a statute which was not in existence when these bonds were issued?

The case of *Harshman* v. *Knox County,* 122 U. S. 306, 319, is referred to by the learned judge holding the Circuit Court as in principle indentical with this.

In that case, under § 17 of the General Railroad Law of Missouri, the County Court of a county was authorized to subscribe to the stock of railroad companies, though created by special charter, provided the requisite assent of the qualified voters was duly obtained; and § 18 of the law provided that a special tax might be levied for the purpose of paying such bonds *without limit as to its amount.* Under § 13 of the act incorporating the Missouri and Mississippi Railroad Company, taxes might be levied to pay bonds issued thereunder, but not to exceed one twentieth of one per cent upon the assessed value for each year. Harshman recovered judgment upon bonds and coupons issued by Knox County in part payment of a subscription made by said county to the capital stock of the Missouri and Mississippi Railroad Company, upon a petition setting forth that the subscription was authorized under the 17th section of the General Railroad Law. The judgment not being paid, he brought his proceeding by mandamus for the levy of a special tax to pay it, without limit as to the percentage, again alleging that the subscription, in part payment of which the bonds were issued, was authorized by vote under said 17th section.

Upon the trial the Circuit Court required the relator to put in, with the record of the proceedings and judgment, the

bonds;·and it appeared that the latter recited that they were
issued for a subscription authorized by the act incorporating
"the Missouri and Mississippi Railroad Company;" and as the
jury found that the relator had not proved that, despite the
recitals in the bonds, they were issued under the general law,
the court rendered judgment in favor of the respondents. But
this court reversed that judgment upon the ground that, as "it
was part of the plaintiff's case to show, not merely the execu-
tion of the bonds by the county authorities, but that they were
issued in pursuance of a law making them the valid obligations
of the county," and it having been averred that they were
issued under § 17 of the. General Railroad Law, (c. 63, Stat.
1866,) that fact was confessed by the default, and its truth
stood admitted on the record, and as mandamus in such case
was a remedy in the nature of an execution, it could in that
case be limited in its mandate "only by that which the judg-
ment itself declares." And the court say, Mr. Justice Matthews
delivering the opinion : "It may well be that in a case where
the record of the judgment is silent on the point, the original
contract may be shown, notwithstanding the merger, to de-
termine the extent of the remedy provided by the law for its
enforcement; but that is not admissible where, as in this case,
the matter has been adjudged in the original action. . . .
By the terms of the judgment in favor of the relator, it was
determined that the bonds sued on were issued under the
authority of a statute which prescribes no limit to the rate of
taxation for their payment. In such cases, the law which
authorizes the issue of the bonds gives also the means of pay-
ment by taxation. The findings in the judgment on that point
are conclusive."

·. But there the power to issue the bonds was not questioned.
The controversy was·as to the rate of taxation, depending
upon which act they were issued under. If the original con-
tract could have been resorted to, the decision might have been
otherwise as to the rate, but it was held that that could not be
done, because, from the averments which formed part of. the
complete judgment record, it appeared that. the bonds were
issued under one act rather than the other, while each of the

acts fully authorized the issue and gave the power to tax to pay. But in the case at bar it appeared from the judgment records, or if not, from relator's petition, that the bonds were issued under an abrogated statute, and were consequently void, and that the respondents possessed no power to tax to pay them, because that power was given only by the statute which had so ceased to exist.

The power invoked is not the power to tax to pay judgments, but the power to tax to pay bonds, considered as distinct and independent, and therefore, when the relator is obliged to go behind his judgments as money judgments merely, to obtain the remedy pertaining to the bonds, the court cannot decline to take cognizance of the fact that the bonds are utterly void and that no such remedy exists. *Res judicata* may render straight that which is crooked, and black that which is white, *facit ex curvo rectum, ex albo nigrum*, (*Jeter* v. *Hewitt*, 22 How. 352, 364;) but where application is made to collect judgments by process not contained in themselves, and requiring, to be sustained, reference to the alleged cause of action upon which they are founded, the aid of the court should not be granted when upon the face of the record it appears, not that mere error supervened in the rendition of such judgments, but that they rest upon no cause of action whatever.

*The judgment is reversed and the case remanded, with a direction to dismiss the petition.*