UNITED STATES ex rel. BAER v. CITY OF KEY WEST.

(Circuit Court of Appeals, Fifth Circuit.   December 7, 1896.)

No. 530.

1. MUNICIPAL CORPORATIONS—LIMITATION OF INDEBTEDNESS—MANDAMUS TO LEVY TAX.
    The act of May 25, 1895, supplementary to the charter of the city of Key West, Fla., and "to extend the powers of said municipality," which gives the city power to make special levies of taxes for payment of interest on debt, and for sinking fund, removes the limit previously placed by charter upon the city's power to tax, so far as to permit it to levy a tax sufficient to pay a debt lawfully contracted; and the city may be compelled by mandamus to levy a tax, either in a single year or within a reasonable number of years, in the court's discretion, to pay a judgment against it.

2. SAME.
    When a municipality has an option to pay a debt, either by levying a tax or by issuing bonds, a mandamus recognizing the option, and requiring it to do one or the other, would not be bad for uncertainty;  but, if such municipality has expressly refused to issue bonds, it is not error, when a mandamus is issued, to make it require absolutely the levy of a tax.

In Error to the Circuit Court of the United States for the Southern District of Florida.

H. Bisbee and C. D. Rinehart, for plaintiff in error.
J. M. Phipps, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

McCORMICK, Circuit Judge.   George J. Baer, a citizen of Missouri, the relator in this cause, holds a judgment against the city

of Key West for a large amount, on which he has run execution, and the execution has been returned nulla bona. On June 17, 1895, he showed this fact, by proper pleading, to the circuit court for the Southern district of Florida, and further showed that the city of Key West had no exigible property, and that he was unable to enforce his judgment by ordinary process. He showed that the city had the power to levy a tax for the payment of his judgment, and that it had the power to issue bonds from the proceeds of the sale of which it could pay this judgment, but that it had refused, and still refuses, to do either one or the other. He prayed that a writ of mandamus should issue requiring the city to levy a tax sufficient to pay his judgment, or to issue bonds sufficient to pay it. In due course of that proceeding, the application came to a hearing and decree in the circuit court, and a peremptory mandamus was issued, directed to James A. Waddell, mayor, and to B. B. Whalton, G. B. Patterson, John T. Sawyer, George S. Waite, George Hudson, J. J. Warren, W. S. Delaney, G. Ayala, and M. S. Moreno, commissioners of the city of Key West, commanding and enjoining the said board to levy, assess, and collect a tax upon the property, real and personal, subject to taxation by said city, and not less than 4½ mills upon each dollar of said assessed valuation of said property, for the year ending December 31, 1896, and for each and every year thereafter, for the purpose of paying the judgment in the above-entitled cause, and costs and interest thereon accruing, and to apply such moneys to the payment thereof until the full amount of said judgment, interest, and costs has been paid, or until the further order of this court in the premises. From this judgment the relator prosecutes this writ of error, and assigns the following grounds:

(1) The court below erred in its order for a peremptory writ of mandamus, and in the said writ, in not commanding the defendant, the city of Key West, to assess, levy, and collect a tax for more than four and one-half mills upon the assessed valuation of the property taxable by the said city for the purpose of paying the judgment stated in the said writ, and the interest accrued and accruing thereon, on the ground that under the laws of the state of Florida, referred to in the said writ and other laws of the state, the said city is not restricted and limited to a tax of four and one-half mills upon said property for the purpose of paying the said judgment and the interest thereon.

(2) The court below erred in its order of July 3, 1896, denying the plaintiff's action, to increase the rate of taxation above four and one-half mills, for the purpose of paying said judgment and interest, upon the grounds stated in the above first assignment of error.

(3) The court below erred in its order for a peremptory writ of mandamus, and in its order of July 3, 1896, denying plaintiff's motion filed July 2, 1896, and in issuing said writ, in not requiring the mandatory part of the said writ to be in the alternative, to wit, to assess, levy, and collect a tax sufficient to pay the said judgment, or to sell bonds described in the said writ, and apply the proceeds thereof to pay the said judgment, interest, and cost thereon, on the ground that the said city had the right and the authority to sell such bonds, and apply the proceeds to pay said judgment.

Under the order of April 6, 1896, and the said peremptory writ, it will require from thirty to forty years to pay the judgment and interest thereon by taxation, at the rate of four and one-half mills per annum, and this is a denial of justice, and a deprivation of the relator's rights, without due process of law; and this is assigned as error.

On the 4th of February, 1869, the legislature of Florida passed a general act for the incorporation of cities and towns, in which it provided on the subject of taxation:

That the city or town council shall have power to raise by tax and assessment upon all real and personal estate, and by any other constitutional method of taxation, within the corporation, any and all sums of money that may be required for the use and good government of the city or town, and for the carrying out the powers, rights, and duties herein granted and imposed, and to enforce the receipt and collection thereof in the same manner as the assessments and taxes of the state are collected. But in no case shall the said city or town council have power to make discrimination in the assessment of taxes.

On March 8, 1877, there was passed an amendment to the act of February 4, 1869, which provided on the subject of taxation:

The valuation of property, as made by the officers of this state in each year for the purpose of taxation, shall be adopted by all municipal governments as the true valuation of the property within their respective corporations, and the total taxes levied upon property by any municipal corporation, in any one year, shall not exceed one per cent. upon such state valuation, but this provision is not to be so construed as to prevent the said corporation from levying sufficient tax to meet the payment of interest on its outstanding bonds, and to provide for the payment of the principal thereof when the same shall become due.

This last provision is also embodied in an amendment to the act of February 4, 1869, which was passed March 5, 1883. Sess. Laws, 1883, pp. 86, 87, § 2.

On May 16, 1889, the legislature passed "An act to establish the municipality of Key West, provide for its government and prescribe its jurisdiction and powers." The fourth section of that act is as follows:

That the commissioners aforesaid, and such officers as may be appointed, and the inhabitants within the limits of the city, as herein defined, shall be vested with all the powers and authority, rights and privileges, and charged with all the duties which are conferred on the aldermen and other officers and the inhabitants, under and by virtue of the act to provide for the incorporation of cities and towns, approved 4th February, A. D. 1869, chapter 1688, and the amendments thereto, and other acts conferring power upon municipal corporations, except as hereinafter provided, and as may be inconsistent with this act, and all ordinances in force governing the defunct city of Key West shall remain in force and extent over and embrace the boundaries of the present city of Key West, as is provided by this act, until altered or repealed by the commissioners thereof.

And the sixth section is as follows:

The commissioners aforesaid shall have power to employ a competent engineer, whose compensation shall be fixed by a majority of the board, who shall make a thorough survey of the city and draw plans and specifications for the proper grading, and grading and paving of the streets and sidewalks of said city, with a view of inaugurating a perfect system of surface drainage and underground sewerage, and in order to carry out such system of drainage, both surface and underground, and to have said streets graded, and graded and paved in accordance therewith, said commissioners shall have power and authority to borrow a sum of money not to exceed five hundred thousand dollars, at a rate of interest not to exceed five per centum per annum, for a period of thirty years; and said commissioners are hereby authorized to issue bonds for said sum of money, payable by said city of Key West at the end of thirty years, bearing said rate of interest, payable annually, but redeemable after ten years from their date at the option of said city; and in order to meet the interest upon said bonds and create a sinking fund for their ultimate redemption, the commissioners aforesaid shall have power and are hereby required to levy a special tax of not exceeding seven (7) mills upon the dollar upon

all property in said city, which special tax shall be exclusively used for the purpose of paying the interest upon the bonds aforesaid and in creating a sinking fund for their redemption.

And the sixteenth section is as follows:

All property shall be taxed as is provided in section 5, article ix. of the constitution, and the taxes to be levied upon such property in any one year shall not exceed five mills upon the dollar for general revenue tax, three mills on the dollar for waterworks, water supply and fire protection, and seven mills to pay the interest and create a sinking fund for the payment of the interest upon and the final redemption of the bonds issued under and by virtue of section 6 of this act.

Sess. Laws 1889, pp. 219, 220, 222.

The judge of the circuit court refers to an act of 1891 (not accessible to us), which permitted to be levied for general revenue 5 mills; for waterworks and fire protection, $3\frac{1}{2}$ mills; and, for interest and sinking fund on bonds, 7 mills, and no more.

On May 25, 1895, the legislature passed "An act supplementary to an act to establish the municipality of Key West, provide for its government, and prescribe its jurisdiction and powers, approved May 16, 1889, and to extend the powers of said municipality," which contains this provision:

As soon as practicable, after such approval and adoption of the assessment roll, the city commissioners shall determine the amount and fix the rate of taxation, and make the annual tax levies of the current year. Such levies shall not exceed, in any year, for ordinary municipal purposes, a higher rate of tax than one per cent. of the assessed value of the taxable property within the corporate limits of said city; the word "ordinary" is to embrace all expenses for police, streets, gas, and other illuminating material, and all other purposes strictly municipal; but special levies may be made for payment of interest on debt, for sinking fund and also for a special tax not exceeding one-half of one per cent. on the city valuation for water works and fire protection.

Sess. Laws 1895, pp. 276, 277.

When such a corporation as the city of Key West is created, the power of taxation is vested in it as an essential attribute for all of the purposes of its existence, unless its exercise be in express terms prohibited. U. S. v. New Orleans, 98 U. S. 393; Citizens' Sav. & Loan Ass'n v. City of Topeka, 20 Wall. 660. Where special or general authority is given to incur debt, full power to tax to an amount sufficient to meet both principal and interest at maturity may be inferred, where there is nothing expressed in the act to the contrary. If, in connection with the authority to create the debt, there is a special provision naming a limited rate of taxation for its discharge, the case is brought directly within the maxim, "Expressio unius est exclusio alterius." U. S. v. Macon Co., 99 U. S. 590. Sections 4, 6, and 16 in the act of May 16, 1889, must be construed together, and the limitation imposed by the amendments of 1877 and 1883, referred to in section 4, restrains the power to tax given by that section, within any one year, to 1 per cent. on the value of property, as shown by the assessment roll, except as provided in section 6, or limited in section 16. Section 6 provides for the proper grading, and grading and paving the streets and sidewalks with a view of inaugurating a perfect system of surface drainage and underground sewerage; and, in order to carry out such system, the city is authorized to borrow not ex-

ceeding $500,000, for a period of 30 years, and issue its bonds for the amount borrowed, and to levy a special tax not to exceed 7 mills on the dollar upon all property in the city. The original grant of power to levy taxes sufficient to meet the legal require-ments of the city is clearly limited by the act of 1877, and the limitation is continued in the act of 1883, and preserved by the reference to those amendments in section 4 of the act of 1889, and further limited in section 16. The special purpose provided for in section 6 of the act last named is circumscribed by the limit of the debt to be incurred and the limit put on the tax to be im-posed to pay it. Therefore, if not affected by the subsequent legis-lation, it is clear to us that the relator cannot complain of the judgment he has brought up for our review.

The record shows that the judgment for debt which the relator holds against the respondent was rendered March 19, 1894, for the sum of $114,523.71. That judgment was brought by writ of error to this court, and was affirmed January 29, 1895, and a motion for rehearing was refused February 20, 1895. As shown above, the legislature, on May 25, 1895, passed the act to extend the pow-ers of the municipality of Key West, in which the 1 per cent. limit for taxes in any one year for ordinary purposes is preserved, and the ordinary purposes defined, "but special levies may be made for payment of interest on debt, for sinking fund," and also for a special tax not exceeding one-half of 1 per cent. for waterworks and fire protection. The circuit court held that the special levies for interest on debt and for sinking fund, authorized by this act of 1895, should be construed to mean that such special levies, to the extent only that they had been by the previous act author-ized, should still be allowed. The declared purpose of the act is to extend the powers of the municipality. The power to tax is the vital power of such a body. It is true that the section does extend this power in other named particulars, and limits the rate as to those others, while in this no extent or limit of the authorized rate is literally expressed. It is to be observed that the language is not "interest on bonds and for sinking fund," while section 6 of the act of 1889 clearly authorized and contemplated a bonded debt, and the special tax in that section mentioned was to be used exclusively "for the purpose of paying the interest upon the bonds aforesaid, and in creating a sinking fund for their redemption," and section 16 made special express reference to the bonds. What the legislature had in hand in considering the supplemental act of 1895 was the then condition of the affairs of the municipality, and it must have been advised of the state of its indebtedness. The omission, therefore, of express reference to the bonded indebtedness, and the use of the more comprehensive term, must import a mean-ing. It is settled that the provision theretofore made for the is-suance of bonds, and for their payment, could not be so changed as to prevent the enforcement of those provisions as to all such bonds as were outstanding. It is not against justice or good con-science that a municipal corporation should be given power to pay, in the only way it can pay, a debt which it had been given power

to lawfully contract. The relator's judgment debt springs out of a contract which the judgment conclusively evidences the city had lawfully made with him. We therefore conclude that, under the act of 1895, a special levy may be made by the city of Key West for payment of interest on its debt, and for sinking fund, to meet the principal of its debt, and that it is thus charged with the duty to pay the relator's judgment, which duty can be enforced by mandamus, the necessary substitute for an execution in such cases.

No authority to issue bonds has been shown except that given in section 6 of the act of 1889, and that authority is to issue bonds for a specified purpose. For some reason, the relator in this case has not, by his pleadings, opened the facts which attended and supported his judgment, further than to say that it was recovered in a suit for the breach of a valid contract made with him by the city. The circuit court whose judgment we are now reviewing rendered the judgment for debt, which the relator is unable to have executed by ordinary process, and which was affirmed by this court. It is suggested in argument that the circuit court and this court have, therefore, judicial knowledge of the facts; and it is implied, rather than urged or even clearly expressed, that the relator's judgment is for a part of the debt which the city was specially authorized to incur, and for which it could issue bonds. However this may be, it is clear to us that the relator, while in his pleadings he expresses his willingness to accept bonds at the minimum rate given in the statute, does not make, or claim to make, a case that would warrant the court in compelling the issuance of bonds. Mandamus is a very direct peremptory proceeding. Its office, when it applies, is to enforce a specific duty. In a case like this, its office is to enforce the payment of the debt. The payment of the debt will discharge the peremptory mandamus to levy a special tax for that purpose, just as the payment of any ordinary judgment will discharge the levy of an execution. Where the corporation debtor has an option to pay in money, or to fund in bonds, or to pay by sale of bonds, it should have an opportunity to exercise that option; and a writ of mandamus that recognizes that option, and commands the levy of a special tax to meet the debt, or the satisfaction of it by the sale of bonds, or other lawful means, would not be bad for uncertainty, or set aside for being alternative. In this case, however, the respondent not only does not claim such an option, but has already expressly declined to issue bonds for this debt, or for obtaining money to pay it, and insists that it has no power to do so. It was not error, therefore, to make the mandamus absolute.

As the relator's debt is all mature, and both interest and principal calling for immediate payment, which the city is in duty bound to make, and has lawful authority to raise by levy of a special tax, it would not be error in the court to require that the tax should be sufficient to meet the whole debt from the first year's assessment and collection; but out of regard to the nature of the parties, and because even warranted levies may prove unnecessarily

burdensome, the court may exercise a sound discretion in the matter, and require full satisfaction to be made by a levy for one year, or distribute the burden over a reasonable number of years. East St. Louis v. Amy, 120 U. S. 600, 605, 7 Sup. Ct. 739; Commissioners v. Loague, 129 U. S. 493, 505, 9 Sup. Ct. 327.

It is ordered that the judgment of the circuit court is reversed, and this cause is remanded to that court, to be proceeded with in accordance with the views expressed in this opinion.