THE STATE OF DELAWARE, upon the relation of William A. Roman, v. WALTER G. TATNALL, JR., et al., being and constituting the Department of Elections for New Castle County, and FRANK J. CORSANO.

(*May* 29, 1943.)

TERRY, J., sitting.

*William S. Potter* for the relator.

*Clair J. Killoran,* Attorney-General, for Walter G. Tatnall, Jr., et al., constituting the department of Elections for New Castle County, respondents.

*Vincent Theisen* for Frank J. Corsano, respondent.

TERRY, J.:

On Wednesday, May 28, 1943, there was presented to me a petition in the name of the State of Delaware upon the relation of William A. Roman, praying that a peremptory writ of mandamus may issue out of this Court directed to Walter G. Tatnall, Jr., William Wingate, T. Muncy Keith,

Louis Meli, Sigmund Schorr, Christopher S. Glover, Robert A. Groves, Wayne C. Brewer and James G. Shaw, being and constituting the Department of Elections for New Castle County, requiring them to omit from the official ballot to be used at the forthcoming city election to be held in the City of Wilmington on June 5, 1943 the name of Frank J. Corsano as a candidate for member of council from the Fifth Ward of said city.

The petitioner recited in part as follows: That he is a resident of the Fifth Ward in the City of Wilmington, and is a duly qualified elector entitled to vote at the forthcoming city election to be held on June 5, 1943; that the respondent, Frank J. Corsano, is a resident of the Fifth Ward in the City of Wilmington residing at 1800 West 8th Street; that, pursuant to the provisions of the City Charter of the City of Wilmington, a city election will be held on the first Saturday in June, 1943, to-wit, June 5, 1943, at which time the qualified electors of the several election districts will vote for members of council from the respective Wards of the City of Wilmington; that the Department of Elections is charged with the responsibility of printing the ballots for the forthcoming city election; that at the said election there is to be elected a member of the City Council from the Fifth Ward; that the respondent, Frank J. Corsano, is a Justice of the Peace of the State of Delaware, having been appointed to said office by the Governor of Delaware on August 1, 1941, and said appointment having been confirmed by the Senate of the State of Delaware on January 7, 1943; that Frank J. Corsano has continued to act in the capacity of a Justice of the Peace of the State of Delaware from the time of his appointment down to and including the present date; that Frank J. Corsano has been nominated for the Office of Member of Council from the Fifth Ward for election at the said forthcoming city election, and that the certificate of his nomination was filed with the Department of Elections on Monday, May 17, 1943; that the said Frank J. Corsano is ineli-

gible as a candidate for member of council from the Fifth Ward at the forthcoming election by reason of *Chapter* 220, *Volume* 43, *Laws of Delaware;* that the relator has made a demand upon the Department of Elections that the name of Frank J. Corsano, aforesaid, be omitted from the official ballot to be used in said election; that the Department of Elections has refused said demand, and stated that it will, unless restrained, place the name of Frank J. Corsano on the official ballot to be used at said election as a candidate for Office of Member of Council from the Fifth Ward, aforesaid.

The respondents constituting the Department of Elections, and the respondent, Frank J. Corsano, filed motions to dismiss the petition of the relator on several grounds. However, it was agreed that there were but three questions for me to determine, two of which were argued and briefed by the Attorney General representing the Department of Elections, and the remaining question argued and briefed by Mr. Theisen, representing Frank J. Corsano.

It was stipulated and agreed between counsel representing all of the parties herein that the motions to dismiss were to be taken as answers, which answers were to be considered by me as admitting the facts set forth in the petition. Since the promptness of decision was of far more importance than the form in which such decision was cast, I called respective counsel before me on the 31st day of May and stated to them that I was of the opinion that the writ as prayed for should issue, and I entered an order in accordance.

The following are the reasons for my conclusions concerning the two questions raised, argued and briefed by the Attorney General: He contended that, since the Department of Elections had no discretion nor any duty to pass upon the qualifications of any candidate concerning his eligibility, or the regularity of his nomination, or the constitutionality of any statute, I could not through the exercise of a peremptory writ of mandamus direct the Department so to do. In

support of his argument the following cases were cited: *Taxing District of Brownsville v. Loague*, 129 *U. S.* 493, 9 *S. Ct.* 327, 32 *L. Ed.* 780; *State v. Clark*, 86 *W. Va.* 496, 103 *S. E.* 399; *Roussel v. Dornier*, 130 *La.* 367, 57 *So.* 1007, 39 *L. R. A. (N. S.)* 826; *Nicholson v. Earle*, 20 *Pa. Dist. R.* 781.

It was urged that the Department of Elections is an administrative body, and that the Act creating it does not expressly, or by implication, vest the Department with any judicial power, function or duty to inquire into the eligibility of any candidate, the regularity of his nomination, or the constitutionality of any statute; that its power and duty to determine the qualification of any candidate is restricted to the form of the certificate of nomination; and that if found to be proper, and in accordance with the law, the Department must file the same and include the person therein named upon the official ballot for the office therein designated. It was urged that mandamus is proper only to compel the Department to do that which is its duty to do without the necessity of mandamus; that no authority can be conferred, and that the Department, in order to be coerced, must have had the duty to perform originally.

Admitting arguendo the reasoning advanced to be correct, does the fact that I could not direct the Department under a writ of mandamus to inquire into and determine the questions, aforesaid, answer the actual question presented? I did not think so. It seemed to me that it was my duty to inquire into the admitted facts and the law applicable, and then determine as to whether or not Mr. Corsano was a candidate in fact, irrespective of any power or duty imposed upon the Department of Elections in the premises. *Felt v. Waughop*, 193 *Cal.* 498, 225 P. 862; *State v. Harrington et al.*, 3 *Terry* (42 *Del.*) 14, 27 A. 2d 67.

It was admitted that Mr. Corsano accepted his appointment to the office of a Justice of the Peace subsequent to the enactment of *Chapter* 220, *Volume* 43, *Laws of Delaware*,

which restricted members of the Judiciary, including Justices of the Peace, from becoming candidates for elective offices. It was admitted that Mr. Corsano as of the date his nomination was filed with the Department of Elections was discharging the duties of the office of a Justice of the Peace, and, therefore, from the admitted facts it was clear that, if *Chapter* 220, *Volume* 43, *Laws of Delaware* is constitutional, and if the Office of Council for the Fifth Ward of the City of Wilmington is one of the offices intended under *Chapter* 220, aforesaid, Mr. Corsano's candidacy for office would have been in direct violation of the provisions of *Chapter* 220, aforesaid, and such a candidacy could not have been one in fact. It naturally follows that if he could not have been a candidate in fact, that his name could not have been properly included on the official ballot as a candidate from the Fifth Ward for the Office of Council to be used at the city election to be held on the 5th day of June, 1943.

The Attorney General under his next or second argument raised the question as to whether or not there exists an adequate remedy at law. He contended that Mr. Corsano's name must be placed upon the ballot, and that a determination concerning his eligibility for office or the regularity of his nomination would have to be inquired into by the members of council under *Paragraph* 42 of the *City Charter*, the pertinent provisions thereof being as follows:

"It shall be the judge of the election returns and qualifications of its members, and of all officers of the corporation."

He contended that the State and not the relator herein is the real party in interest, and the question was not whether the relator has a legal remedy after election, but rather whether or not the general public which he represented has a legal remedy after election. He said that it must be assumed, and, as a matter of law, the council would protect the interest of the public in disqualifying anyone not eligible

to be seated therein, and that the duty which the relator requested had been completely reposed by statute in City Council.

The logical conclusion to be deducted from the argument advanced would be to say that the qualified electors of the Fifth Ward were not entitled to vote for a candidate in fact. I thought they were. I could determine no good reason why any ballot should contain the name of any person who could not in fact be a candidate. The very presence of his name on the ballot would only operate to deprive uninformed electors of their votes to the injury of one or more of the actual candidates, and to the possible perversion of the true popular will. To give to the certificate of nomination in this case the conclusive effect contended for would have been, it seems to me, to elevate form above substance. The law certainly contemplates a submission to the electors of a choice between persons who are candidates in fact, and this can only be accomplished by determining prior to the printing of the ballots whether or not Mr. Corsano was or was not a candidate in fact. It is difficult for me to concur in the thought that *Paragraph* 42, aforesaid, affords an adequate remedy at law. In the event of Mr. Corsano's election, I did not believe it could be successfully contended that any elector of the Fifth Ward, including the relator, could compel the City Council to take any action whatsoever concerning the qualifications or eligibility of Mr. Corsano. The question of Mr. Corsano's qualifications concerning eligibility would have to be raised by a newly elected member of council not from the Fifth Ward, or by an election contest instituted by the defeated candidate under the provisions of *Paragraph* 800 of the *City Charter*, being *Chapter* 727 of *Volume* 19, *Laws of Delaware*.

The relator contended that *Paragraph* 42 of the *City Charter*, being *Chapter* 207 of *Volume* 17, *Laws of Delaware*, standing alone is ineffectual, and that *Paragraph* 800 of the *City Charter*, being *Chapter* 727, *Volume* 19, *Laws of Dela-*

*ware,* has been enacted to supplement *Paragraph* 42, aforesaid. *Paragraph* 800 in part is as follows:

"If any candidate for any offices before mentioned shall choose to contest the right of any person claiming to have been elected to said offices * * *." (The Section then sets forth the procedure to be followed.)

He, therefore, argued that council could not judge Mr. Corsano's qualification in the event he was elected, unless some opposing candidate should file a petition for a contest under *Paragraph* 800, aforesaid. It seemed to me that the question of procedure concerning the determination of the qualification of Mr. Corsano, if elected, was immaterial. The glaring fact remained that such a remedy certainly is not and could not be considered adequate here, as such a determination of disqualification of Mr. Corsano could not ultimately bring about the same result sought to be accomplished by the writ of mandamus prayed for. In other words, in order for any other proceeding to be a sufficient answer to the relator's petition, it must appear that the relator can obtain full and adequate relief in such proceeding.

I now proceed to the third question as argued and briefed by Mr. Theisen. It concerned in part the constitutionality of *Chapter* 220, *Volume* 43, aforesaid. The pertinent provisions of *Chapter* 220 are as follows: "It shall be unlawful for any member of the Judiciary of this State, including Justices of the Peace, Judges of the Courts of Common Pleas, and Judges of the Municipal Court of the City of Wilmington, to be a candidate for any elective office during his term as a member thereof, and until six months thereafter."

There were two arguments advanced. First, that *Chapter* 220 violates the provisions of *Article* 9, *Section* 1 of the *Constitution* of this State. The pertinent portion of *Article* 9, *Section* 1 relied upon is as follows: "No general

incorporation law, nor any special Act of incorporation, shall be enacted without the concurrence of two-thirds of all the members elected to each House of the General Assembly."

It was contended that, since the City of Wilmington is a municipal corporation, new or added restrictions could not be imposed on the Office of Council not heretofore imposed under the City Charter, or upon persons who have qualifications for such office unless the Act imposing such restrictions received a vote of two-thirds of the members elected to each House of the General Assembly; that, since *Chapter* 220, originally designated as House Bill No. 211, passed the House by a vote of 20 to 13, it was argued that the Bill lacked 4 votes for a two-thirds majority, and for that reason could not affect in any way the City Charter in respect to the right of the corporation to elect persons qualified as members of council according to the requirements of its Charter, or in respect to the rights which such Charter gave to the respondent, Mr. Corsano, to be eligible to that office, as it not only takes away a former vested right of the corporation to elect Mr. Corsano to the Office of Council, but also is an individual disqualification—a restriction of the right which Mr. Corsano in this case had in common with every other qualified person of the Fifth Ward to be eligible to be a candidate for the Office of Council. *State v. Wilmington City Council*, 3 *Harr*. 294.

Space will not be consumed for a detailed statement of my views concerning this contention. It should suffice to say that in my opinion *Chapter* 220 does not purport to do at all that which was contended. It does not in any manner change the qualifications of a candidate for the Office of Council, nor is such intended by *Chapter* 220. It merely places a qualification in the manner of restriction on a Justice of the Peace who has at his own volition, and with the knowledge of the existence of the provisions of *Chapter* 220, accepted his appointment.

The second argument advanced by Mr. Theisen was that

the provisions of *Chapter* 220 do not apply to the "elective offices" of a municipal corporation. He contended that under previous judicial decisions of this State the word "office" has been defined to mean State and County offices, and that the word "office" has no application to an office or officers of a municipal corporation. It was admitted, however, that the restriction as set forth in *Chapter* 220 is not expressly limited, and on its face appears to apply to any "elective office" in this State, irrespective as to whether or not it is a State, County, Hundred or Municipal office, and regardless of whether or not it is public, corporate or a fraternal election. The following cases were cited as authority for his position. *State v. Churchman,* 3 *Penn.* 361, 51 A. 49 and *State v. Wilmington City Council,* 3 *Harr.* 294. I considered the cases cited, but I did not believe either case to be of a controlling force in any respect concerning the problem which the relator's petition presented. Certainly, they are not authority for the interpretation of the Statute here in question, unless it can be definitely said that an ambiguity exists in the language employed. Therefore, the questions presented were these: first, the determination of the principle which the Legislature intended to announce; second, what "elective offices" were intended to be included under the provisions of *Chapter* 220.

It is axiomatic that in determining legislative intent due regard must be given to the principle which the Legislature intended to announce by the enactment of any given statute. Of course, in determining that intent the effect of the words found in the statute should not be misconstrued, nor should the intent be extended beyond that which manifestly appears.

Now, what principle did the Legislature intend to announce? This question should afford no difficulty. The enactment is a specific declaration of policy to the effect that Judges should be excluded from extra public duties as may

tend to militate against the free, disinterested and impartial exercise of their judicial function, such as subjecting themselves to the entanglements, and at times to the partisan political suspicions so often the result of other and conflicting duties.

Now, what "elective offices" are intended to be included under the provisions of *Chapter* 220? A careful reading of the language employed reveals no ambiguity, and the words "elective office" must be given their true and ordinary meaning, in accordance with the principle as announced. I must say that the "elective offices" of a private corporation or a fraternal organization are not meant to fall within the category of "elective offices" as intended, because the principle announced clearly indicates to my satisfaction that only those offices that are public in their nature are to be included. Now, what is the effect of the argument advanced? It entails the grafting of an exception to the words "elective office," for instance, the clause "except an elective office of a municipal corporation," or it requires the insertion between the words "elective office" the words "State or County." To do this grafting or insertion would amount to an infringement on the legislative language employed by limiting the general provisions as adopted by that body. If the argument as advanced is carried to its logical conclusion, it must be said that the Legislature merely intended to guard against only a part of the mischief that it designed to prevent. To me such a conclusion would be an insult to legislative intelligence, and its effect would be that the Legislature intended that a Justice of the Peace could be a candidate for a municipal "elective office," but that a Judge of the Municipal Court of the City of Wilmington could not be a candidate for a County office. Clearly, the Legislature never intended such a situation to exist. It was clear to me that, when the policy enunciated is considered with the language employed, the words "elective office" in-

clude public "elective offices" of the State, a County, and of a municipal corporation.

The motions to dismiss the petition were denied. The writ as prayed for was issued.