[No. 1562.]

THE BOARD OF COUNTY COMMISSIONERS OF GRAND COUNTY v. THE PEOPLE EX REL. NEW HAMPSHIRE SAVINGS BANK.

1. MANDAMUS—TAX LEVY—DEMAND.

In an action of mandamus to compel a board of county commissioners to levy a tax to pay a judgment against the county where the only evidence of a demand on the board to levy such tax and the refusal of the board to make the levy was of a demand and refusal made after the petition had been verified and filed and the action commenced, it was not proof of the demand and refusal alleged in the petition and was insufficient to sustain the action.

2. JUDGMENTS—ENFORCEMENT.

The merger of a debt into a judgment changes its form, but not its identity, and when the judgment is presented to a court for affirmative action, and it is sought to be collected by a process not contained within itself, the court will look behind the judgment in order to ascertain from the nature of the original claim what method may be adopted for its enforcement.

3. COUNTY WARRANTS—ACTION UPON—MANDAMUS.

An action for a money judgment cannot be maintained against a county upon a county warrant. Mandamus is the proper remedy whether the money applicable to the payment of the warrant has been collected and its payment refused, or whether the board of commissioners failed to levy the proper tax from which the warrant could be paid, in the one case against the treasurer to compel payment and in the other against the board to compel the levy of the tax.

4. JUDGMENTS—COUNTY WARRANTS—LEVY OF TAXES—MANDAMUS— PLEADING.

In an action of mandamus to compel a board of county commissioners to levy a tax to pay a judgment against the county where the petition shows that the judgment was rendered upon county warrants, the relator must make the same showing that he would have to make if the action had been brought upon the warrants, and unless the petition shows that the board has failed to levy the tax it was required by law to levy to pay such warrants, it fails to state a cause of action. It is not sufficient to allege that the board has failed and refused to levy a tax to pay the judgment. BISSELL, P. J., dissenting.

*Error to the District Court of Arapahoe County.*

Mr. L. B. FRANCE, Mr. SAM W. JONES and Mr. CHAS. G. CLEMENT, for plaintiffs in error.

Messrs. PATTERSON, RICHARDSON & HAWKINS, Mr. DANIEL E. PARKS and Mr. WILLARD TELLER, for defendants in error.

THOMSON, J.

#### ON REHEARING.

This is a proceeding in mandamus to compel the board of county commissioners of Grand county to levy a tax for the payment of a judgment. The suit was instituted on the 21st

day of September, 1893, and resulted in a judgment for the relator. From that judgment error was prosecuted to this court, where a reversal was adjudged. *Grand County v. Savings Bank*, 8 Colo. App. 43.

The specific ground on which the judgment was reversed was that there was no proof that the commissioners had refused to levy the tax. There was evidence of a meeting between Mr. Rohan, the chairman of the board, and the representatives of the relator, in the city of Denver, at which Mr. Rohan, purporting to represent the board, refused to agree to the levy of a tax. No authority of Rohan to act for the board was shown, and we held that a refusal by him was not evidence of a refusal by the county. The date of the conversation between Rohan and the relator's representatives did not appear. At the subsequent trial the relator undertook to supply the insufficiency of proof in which the weakness of his case, as first made, consisted. The testimony concerning the conversation between Rohan and the parties speaking for the relator, was the same as before; but it was supplemented by an order of the board from which, it is asserted, Rohan derived his authority. That order reads as follows : " On motion it was ordered that Mr. John Rohan, chairman, be empowered to go to Denver to meet the creditors of the county, and that he is hereby authorized to make such arrangements as he can for the benefit of the county." In further support of his case, the relator introduced another order of the board of which the following is a copy: " On motion the board decided not to take any action in regard to the judgment of New Hampshire Savings Bank and the King judgment, and refuses to make any levy on same at this meeting." The first of these orders was made on the 3d day of October, 1893, and the second, on the 16th of October, 1893. The relator also proved by a witness, Thomas H. Reynolds, that he, as agent of the owner of the judgment, was present at a regular meeting of the board on October 3, 1893, and made a demand on the commissioners that they levy a tax to pay it, but they declined to take any official action while he was

there. The foregoing was all the evidence there was on the question of refusal to levy a tax. The relator had judgment a second time.

The petition for mandamus was verified on the 20th, and filed on the 21st, day of September, 1893, and the alternative writ was ordered on the latter day. The petition alleged that demand had been made on the board for the levy of a tax, and that the board had refused to order a levy, the refusal of which the relator complained was not the refusal which he proved. Unless, before the petition was verified and filed, the board had denied compliance with the demand, no sufficient ground for the proceeding existed, and the relator was not entitled to the writ. Everything that he showed relative to a refusal occurred a considerable time after the action was commenced and the case comes to us again as destitute of necessary proof as it was at first.

The judgment might be reversed at this point, but another question, which more vitally affects the controversy, is now pressed upon us for decision. In our former investigation of the case, the importance of the question was not recognized; while it was made the subject of some remark in the opinion, it was not determined, the decision turning upon another and totally different question; and in the opinion which gave rise to this motion for a rehearing, it was entirely overlooked. As the case is to be retried, and as the question is one which is of controlling importance in all cases presenting the same distinctive features with this, I conceive it to be the duty of this court to express an opinion upon it, and, interposing a few observations by way of preface, I shall put it into form, and proceed to its consideration.

Under our practice, when notice of an application for a writ of mandamus is given in the prescribed manner, no alternative writ issues, but when the application is made without notice, there must be an alternative writ, and when there is an alternative writ, it is the first pleading, and the answer is made to it. Civil Code, secs. 310, 311. In this case there seems to have been an alternative writ, but it does not appear

in the record; it has been ignored by both parties; the answer is to the petition; and the proceeding has been conducted throughout as if the petition were the first pleading, and no alternative writ had been issued.   The question which is raised concerns the petition only, and I shall follow the course which the parties have pursued, and regard the application as having been made upon notice, the alternative writ as unnecessary, and the petition as a complaint.   The answer, after putting in issue the allegation of refusal by the board to levy the tax, and setting up some matters of not much importance, concluded as follows : " Defendants, admitting all the allegations of the complaint not hereinbefore denied, aver that there are not sufficient facts stated in said complaint to constitute a cause of action against the defendants, or to authorize the issue of the peremptory writ of mandamus therein demanded." Before the hearing, the respondents asked leave to withdraw their answer, and file a demurrer to the petition.   The proposed demurrer was tendered, and one of its grounds was that the petition did not state facts sufficient to constitute a cause of action.   The motion was denied.   Joining allegations tendering issues of fact with a demurrer to the petition, was, perhaps, not proper practice, but by their motion, the respondents sought to make the sufficiency of the petition the sole issue, and the question to which the argument is mostly directed, goes to the allegations of that pleading.   The respondents were unsuccessful in their attempt to attack the petition by demurrer, but the sufficiency of the facts which it presents may be inquired into at any time, and the question is properly before us.

The petition, after alleging the rendition of the judgment, and its nonpayment, set forth a demand in writing upon the board for the levy of a tax.  This demand recited that the judgment was upon warrants and orders of the county; and it required the board to levy a tax upon the taxable property of the county to pay the judgment, principal and interest. The refusal which was averred, was a refusal to levy a tax to pay the judgment, or any part of it.   The demand was in-

corporated into the petition, and its statements and recitals are statements and recitals of the petition. It appears, therefore, upon the face of the petition that the judgment was recovered upon warrants or orders of the county; and that the purpose for which the levy was demanded was the payment of that judgment. The question presented is whether the holder of a county warrant, by reducing it to judgment, effects any change in the nature of the debt, or acquires the right to demand its payment at a time or in a manner other than that provided by law when the debt was contracted. This is the question which is to be determined, and upon the determination of which the resolution of the other question, whether the relator came into court with a cause of action, depends.

By the law in force when these warrants were issued, it was provided that there should be levied and assessed upon taxable real and personal property within the state, in each year, for ordinary county revenue, including the support of the poor, not more than ten mills on the dollar; for the support of schools, not less than two, nor more than five mills on the dollar; and for road purposes, not more than five mills on the dollar. Section 2816, Gen. Stat. This section was amended by an act approved April 6, 1891, so as to read that there should be levied and assessed for ordinary county revenue, such rate as would be sufficient to defray the ordinary expenses; for the support of the poor, not more than three mills on the dollar; for road purposes, not more than seven mills on the dollar; and for the purpose of paying outstanding warrants and other floating indebtedness, not more than three mills on the dollar. Session Laws, 1891, p. 112. See also same book, p. 290. Further provision was made in relation to outstanding warrants, by an act approved April 8, 1893, as follows: "It shall be the duty of the board of county commissioners of any county in this state which has, or shall have, any unliquidated and unpaid county warrants or orders, drawn on any fund, for the payment of which there are no funds in the county treasury of such county, and to pay

which the incoming taxes already levied are insufficient, at the same time other county taxes are annually levied for the current year, in addition to the other taxes provided by law, to levy a sufficient tax, not exceeding five mills on the dollar of assessed property, as shown by the assessment roll of such county for the current year, for the purpose of creating a 'Special Fund' for the liquidation, payment and redemption of all such unliquidated and unpaid warrants or orders. A like levy shall be so made at such time, annually, until all of such unliquidated and unpaid warrants or orders shall be fully liquidated, paid and redeemed, principal and interest, as provided in this act." Session Laws, 1893, pp. 100, 101. By other legislative provisions, county orders and warrants, properly made and issued, were entitled to a preference as to payment, according to the order in which they should be presented to the county treasurer. Upon presentation of two or more orders at the same time, precedence should be given to the warrant of the oldest date; when two or more orders should be presented at the same time, and there should be no money in the treasury, to the credit of the proper fund to pay them, they should be registered in the order of their date, precedence to be given to the warrant of the oldest date. It was also made the duty of the treasurer to have and keep in his office a book to be called the register of county orders, wherein should be entered and set down, at the date of the presentation thereof, every county order, or other certificate or evidence of county indebtedness, the date and number of the order, the date of the presentation, the name of the payee, and the name of the person presenting it; and the failure of any county treasurer to have and keep such registry of county orders, or make the required entries therein, or the payment by him of any order, there not being sufficient money in the treasury to pay all the orders drawn upon the same fund and previously presented, was made a high misdemeanor. Mills' Ann. Stat. secs. 900, 906, 909. The law relative to the payment of judgments, of which the relator seeks here to avail himself, reads as follows: " When a judg-

ment shall be given and rendered against a county of this state in the name of its board of county commissioners, or against any county officer, in an action prosecuted by or against him in his official capacity, or name of office, when the judgment is for money, and is a lawful county charge, no execution shall issue thereon, but the same may be paid by the levy of a tax upon the taxable property of said county, and when the tax shall be collected by the county treasurer, it shall be paid over, as fast as collected by him, to the judgment creditor, or his or her assigns, upon the execution and delivery of proper vouchers therefor; but nothing contained in this section shall operate to prevent the county commissioners from paying all or any part of any such judgment by a warrant, drawn by them upon the ordinary county fund in the county treasury; *Provided*, That the power hereby conferred to pay such judgment by a special levy of such tax, shall be held to be in addition to the taxing power given and granted to such board to levy taxes for other county purposes, but the board of county commissioners shall levy under this law only such taxes as they, in their discretion, may deem expedient or necessary, and all taxes levied by authority of this act shall not exceed one and one half per centum on the dollar of assessed property for any one fiscal year." Session Laws, 1887, p. 240.

The provisions respecting the payment of county warrants are very clear and precise. The warrants are payable in the order of their presentation to the county treasurer, and not otherwise. The law enters into and becomes part of the contract between the county and the holders of its warrants. Each registered warrant matures as soon as sufficient money has accumulated in the treasury to the credit of the proper fund for its payment, after paying all other warrants of the same class whose registry was prior in time. The holder of a warrant has the right to its payment at its maturity; and without his consent he cannot be deprived of that right by the holders of other warrants, or by the county. The payment

of warrants out of their proper order is positively forbidden, and is not only forbidden, but is made a misdemeanor.

The proposition submitted to us by the relator amounts to this : That by the simple expedient of reducing his claim to judgment, the holder of a county warrant avoids the statutory provisions concerning its payment, and secures an advantage to himself which the statute prohibits.

The question before us is not new.   In different forms it has been frequently before the courts, and I am unable to find any substantial disagreement among the decisions.   The consensus of judicial opinion is that the merger of a debt into a judgment changes its form, but not its identity ; and that when the judgment is presented to a court for affirmative action, and is sought to be collected by a process not contained within itself, the court will look behind the judgment in order to ascertain from the nature of the original claim what method may be adopted for its enforcement.   Inasmuch as this statement is disputed, I think a careful review of the principal authorities will not be misapplied labor.

In *Boynton v. Ball*, 121 U. S. 457, the question was whether a judgment recovered against a bankrupt after the time of commencement of the bankruptcy proceedings, upon a debt which existed prior to that time, was released by the discharge in bankruptcy of the ·judgment defendant.   In the discussion of that question the court said : " Two propositions are advanced by counsel for defendant in error in support of the judgment of the supreme court of Illinois, as reasons why the certificate obtained so long after the judgment in the state court, should not have the effect of a discharge of the debt evidenced by that judgment.   The first of these is, that the original debt on which the action was brought in the circuit court of Stephenson county no longer exists, but that it was merged in the judgment of that court against Boynton, and was therefore not released under the act of congress, which declares that all debts provable against the estate of the bankrupt at the time bankruptcy proceedings were initiated, shall be satisfied by the order of the court discharging the bankrupt.

The argument is, that the judgment now existing against Boynton is not the debt that existed at the time bankruptcy proceedings were initiated; that by the change of the character of the debt from an ordinary claim or obligation to a judgment of a court of record, it ceased to be the same debt, and became a new and different debt as of the date of the judgment. * * * But this court, to which this precise question is now presented for the first time, is clearly of the opinion that the debt on which this judgment was rendered is the same debt that it was before; that, notwithstanding the change in its form from that of a simple contract debt, or unliquidated claim, or whatever its character may have been, by merger into a judgment of a court of record, it still remains the same debt on which the action was brought in the state court, and the existence of which was provable in bankruptcy." In *Wisconsin v. Pelican Ins. Co.*, 127 U. S. 265, the position of the plaintiff in error was precisely the same as that assumed by the relator here. I quote from the argument of counsel for the state : " This court sits upon and tries the question of pecuniary indebtedness, and can neither inquire into nor know what was the cause of action in the original suit. That question is absolutely excluded from the investigation of this court. * * * The rendition of a judgment by a competent jurisdiction merges and extinguishes the original cause of action, and makes the judgment to be a new debt, with the new characteristics of contract obligation, against which no defense is allowed that did not arise subsequently to the judgment." To this contention the court made the following answer: " The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the technical rules, which regard the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay it, do not preclude a court, to which a judgment is presented for affirmative action (while it cannot go behind the judgment for the purpose of examining into the validity of the claim), from ascertaining whether the claim is really one of such a nature that the court is authorized to

enforce it ;" citing, among other cases, *Boynton v. Ball, supra.* In *Brownsville v. Loague,* 129 U. S. 493, a judgment of the circuit court of the United States for the western district of Tennessee, awarding a peremptory mandamus against the board of commissioners of the taxing district of the city of Brownsville, Tennessee, commanding the board to proceed to levy, collect and pay over to the petitioner, Loague, a tax sufficient to pay each and all of certain judgments described in the petition for mandamus, was reversed on the ground that it appeared from the statements in the relator's petition that the bonds upon which the judgments were recovered were void, and the respondents were, therefore, without power to levy a tax to pay them.    The following language of the court is pertinent to the present discussion :  " The power invoked is not the power to tax to pay judgments, but the power to tax to pay bonds, considered as distinct and independent ; and therefore, when the relator is obliged to go behind his judgments as money judgments merely, to obtain the remedy pertaining to the bonds, the court cannot decline to take cognizance of the fact that the bonds are utterly void and that no such remedy exists."

I do not understand that the foregoing decision involves any disagreement with other utterances of the same court to the effect that a judgment is conclusive of the validity of the cause of action.   The character of the indebtedness upon which the suit was brought appeared, as is the case here, in the petition for mandamus ; from the facts concerning it which that pleading set forth, it appeared that the original claim was void, and the court holding itself not precluded by the judgment from an examination of the cause of action which resulted in the judgment for the purpose of ascertaining what the remedy should be, simply decided, upon such examination, that no tax could be legally levied for the payment of the claim, because it was void.

In  *United States v. Macon,* 99 U. S. 582, it was sought to compel the authorities of the county of Macon, Missouri, to levy a tax for the payment of a judgment recovered by the

relator against the county upon interest coupons detached from bonds issued by it under an act of the general assembly of the state incorporating the Mississippi and Missouri Railroad Company.   For the purpose of paying those bonds, that act provided for the levy of a tax not exceeding one twentieth of one per centum upon the assessed value of the taxable property for each year.   The purpose of the proceeding was to compel the levy of an additional tax, the proceeds of which should be applied upon the judgment.   The court held that no greater tax could be levied for the payment of the judgment than that provided for the payment of the bonds, concluding as follows :  " We have not been referred to any statute which gives a judgment creditor any right to a levy of taxes which he did not have before judgment.   The judgment has the effect of a judicial determination of the validity of his demand, and of the amount that is due, but it gives him no new rights in respect to the means of payment." In argument, counsel make some point on the word " new " which we are compelled to admit we do not quite understand. But the meaning of the clause in which it occurs is obvious. It means simply that for the payment of the judgment, the judgment creditor was confined to the means provided for the payment of the original debt, and that in respect thereto his judgment gave him no additional rights.   In that case the means provided for the payment of the bonds was the tax of one twentieth of one per centum, and it was held that the payment of the judgment upon the bonds, if made at all, must come from the proceeds of the same tax.

I quote the following from the opinion in *Ralls County Court v. United States,* 105 U. S. 733, a case in which mandamus was asked to compel the levy of a tax for the payment of a judgment recovered upon interest coupons attached to bonds issued by the county :  " The present suit is in the nature of an execution, and its object is to enforce the payment, in some way provided by law, of the judgment which has been recovered.   The only defenses which can be considered are those which may be presented in the proper course of judicial pro-

cedure against the collection of valid coupons executed under the authority of law, and reduced to judgment. While the coupons are merged in the judgment, they carry with them into the judgment, all the remedies which, in law, form part of their contract obligations, and these remedies may still be enforced in all appropriate ways, notwithstanding the change in the form of the debt." Section 710 of the Iowa Revision of 1860, provided for the levy of a tax for the ordinary county revenue, including the support of the poor, of not more than four mills on the dollar. Section 3274 of the same act exempted from execution public buildings owned by a county, and section 3275 provided that when a judgment should be recovered against a county, in case no property not exempt from execution should be found on which to levy, or in case the judgment creditor should elect not to issue execution, he should be entitled to the amount of his judgment and costs in the ordinary evidences of indebtedness of the county, but that if the county should issue no scrip or evidence of the debt, a tax must be levied as early as practicable, sufficient to pay off the judgment, with interest and costs. Judgments were recovered against the county upon certain of its warrants issued for ordinary county expenses, and the board of supervisors of the county, in addition to a tax for ordinary county revenue of four mills on the dollar for each of the years 1870 and 1871, levied a special tax, pursuant to the provisions of section 3275, of ten mills on the dollar, to be applied upon those judgments. The question arose whether that section could be resorted to for the purpose of compelling payment of judgments upon county warrants issued for ordinary county indebtedness, and was decided by the supreme court of Iowa, in *Land Co. v. County of Sac*, 39 Iowa, 124, Chief Justice Miller speaking for the majority of the court. The argument for the affirmative was that since section 710 conferred no authority to levy a tax to pay off judgments against the county, the power to do so must be found in section 3275. But the court held otherwise, assigning as its reasons that the only authority to levy taxes for the ordinary county revenue was

conferred by section 710; that one of the purposes of the ordinary county revenue was the payment of the debts of the county; and that it was immaterial whether those debts were in the form of warrants, or judgments obtained on warrants.

A dissenting opinion was delivered by Judge Cole, in which he argued that the board was, by section 3275, authorized to levy a tax to pay off the judgments, even although taxes for other purposes had been levied to the extent of the maximum of its authority. But in the case of *Polk v. Winett*, 37 Iowa, 34, a case decided after *Land Co. v. Sac County*, although reported in an earlier volume, the same judge, delivering the opinion of the court, abandoned his former position, and held that the board of supervisors had no authority to levy a tax to pay a judgment rendered upon warrants for ordinary and bridge revenue, where it had, in the same year, levied the maximum rate allowed for those purposes.

*Stryker v. Grand County*, 77 Fed. Rep. 567, was a proceeding by mandamus to compel the levy of a special tax for the payment of a judgment rendered against the county upon warrants issued by it. The respondent answered, among other things, that taxes had been levied in every year at the highest rate authorized by law. A demurrer to the answer was overruled, and the ruling sustained by the majority of the appellate court. In the opinion, which was delivered by Judge Thayer, it was said that the legislature did not intend that the holder of county warrants should have the right to reduce them to judgment, and to demand the levy of a special tax to pay the judgment when recovered, without reference to the question whether there were other warrants entitled to priority of payment, and without reference to the question whether such levy would increase the annual tax for ordinary county expenses beyond the highest amount allowed by law. From this opinion Judge Sanborn dissented. He disagreed with his associates upon several of the questions discussed, but he concluded as follows: " By the provisions of Laws, Colo. 1891, pp. 111, 112, it was made the duty of the board

of county commissioners to levy a tax of three mills on the dollar each year 'for the purpose of paying outstanding warrants and other floating indebtedness.' This tax has not been levied, and I am of the opinion that under this statute, the plaintiff in error is entitled to a writ of mandamus, to compel the levy of such a tax to create a fund to be applied to the payment of such warrants, in the order prescribed by the statutes, and on that ground the demurrer should be sustained." Upon that statement of the law, I am in hearty accord with its learned author.

I conclude my review of authorities by an examination of the case of *Rio Grande County v. Burpee*, decided by our own supreme court (24 Colo. 57). A peremptory mandamus had been awarded commanding the commissioners of the county to levy a tax to pay a judgment. The validity of the original cause of action was attacked, and the question was presented whether in the mandamus proceeding the court could go back of the judgment for the purpose of inquiring into the validity of the original indebtedness. The court held that it could not, and that it could not go behind the judgment for any purpose, except to determine what means were provided for the payment of the original claim. After citing a number of cases, and among them *Ralls County Court v. United States, supra*, the court speaking by Mr. Justice Goddard said: " Summed up, the doctrine of the foregoing and kindred cases is that the judgment conclusively determines the validity of the claim against the county, but gives no new rights in respect to the means of payment. Hence the court will go behind the judgment to determine only what means were provided for the payment of the original claim, in order to apply the same to the payment of the judgment."

It is strenuously insisted that the foregoing language is not applicable to a case like the one under consideration. The argument is not destitute of ingenuity, and, if the court had expressed itself less clearly, or if there had been any obscurity in its statement of the case, might be entitled to attention.

But I do not see how a mistake of the court's meaning is possible. The question it was considering was, for what purpose it could not, and for what purpose it could, go behind the judgment; and it simply decided that it could not, for the purpose of investigating the validity of the cause of action, but that it could and would, for the purpose of finding what means were provided for the payment of the original claim, so as to apply those means to the payment of the judgment. And, in so deciding, it placed itself in line, certainly with the weight of authority, and so far as my research has extended, with unanimous authority.   See also *King v. Board*, 77 Fed. Rep. 583.

In the further prosecution of my investigation, I deem it proper to consider the question to what class of judgments the act providing for the levy of taxes to pay judgments was intended to apply.   Is a judgment obtained upon a county warrant within its contemplation?   The supreme court of this state, in *Forbes v. Grand County*, 23 Colo. 344, discussing the questions when a right of action accrues upon a county warrant, and what the action shall be, uses this significant language : " While it may be that under some circumstances an action may lie to recover a money judgment against a county upon orders or warrants of this character, yet the policy of the legislature, as evidenced by the various enactments prescribing the manner in which the finances of a county shall be administered, is manifestly against the maintenance of such a suit."   It is evident from the whole tenor of the opinion, and the authorities it cites, that whether the money applicable to the payment of a warrant had been collected and payment of the warrant refused, or whether the board of commissioners failed to levy the proper tax from which the warrant, in its due order, could be paid, the court regarded mandamus as the proper remedy,—in the one case, against the treasurer to compel payment, and in the other, against the board to compel the levy of the tax.   It appears from the language we have quoted, that the court was not satisfied that a money judgment could ever be recovered upon a county warrant :

but, merely to be on the side of safety, hypothetically conceded the possibility of such a judgment. For the purposes of this discussion, its possibility or impossibility, is not very material; and that circumstances might exist warranting the rendition of the judgment, may be admitted. But if, as the court says, the recovery of such a judgment would be against the manifest policy of the legislature, as evidenced by the manner which it has provided for the administration of the finances of counties, then the act concerning judgments can have no application to it. I cannot conceive that the legislature intended to provide especially for the payment of a judgment, the rendition of which was contrary to its policy. It is not supposable that the legislature made it the duty of the board of commissioners of a county to levy a tax for the payment of a judgment which it did not intend should ever be rendered.

Another reason why the provisions of the judgment act were not designed to embrace judgments upon county warrants, appears upon the face of the act itself. The county commissioners may, at their option, pay all or any part of a judgment by a warrant. A judgment upon a county warrant is within the purview of the statute, or it is not. If it is not, there is nothing to discuss. But if it is, then at the option of the commissioners it may be paid by warrant. The act makes no distinction between judgments, and if its provisions are applicable to a judgment upon a county warrant, then such a judgment is upon precisely the same footing with any other judgment against a county; the commissioners have a right, by the explicit terms of the law, to pay the judgment by a warrant; and to change the law, or deny the right which it gives, is not within the power of the courts. Now the second warrant may also be reduced to judgment, this judgment paid by another warrant, and the same process repeated forever, so that the time would never come when the county's creditor would receive his money. We have no right to impute a want of sense to the legislature, or to suppose that a situation so absurd was within its contemplation.

Furthermore, by carrying into effect the statutory provisions concerning the payment of county warrants, those warrants will be paid in their proper order, without danger to the solvency of the county, but if, by the reduction of a warrant to judgment, a special tax, in addition to all other taxes for which the law provides, may be levied for its payment, another possibility arises, against which it has been the consistent policy of the legislature, as shown by all its enactments affecting the finances of the county, to guard. Each holder of a warrant may, upon its ineffectual presentation to the county treasurer, bring suit and recover judgment upon it; and the several judgment creditors, whose judgments were recovered upon warrants, may then require the levy of a tax in addition to that provided for the payment of the warrants; and such addititional levy may amount to one and one half per centum on the dollar of the valuation of the current fiscal year. This process may be repeated each fiscal year, the solvency of the county threatened, if not destroyed, and the purpose of the legislature to enable counties to pay their debts by a moderate tax, to be levied, if necessary, through a series of years, so that the ability to maintain county governments may not be impaired, thwarted.

The power invoked in mandamus proceedings upon a judgment against a county, recovered on a county indebtedness, is the power to levy a tax to pay the indebtedness; and in this case the extent of that power must be found in the statute providing the tax to be levied for the payment of outstanding county warrants. The complaint shows that the judgment in respect to which relief is sought, was recovered upon warrants and orders of the county. If the board of commissioners each year since the issue of the warrants, levied the highest amount of tax authorized by the law providing the mode of their payment, it performed its whole duty. Its power was exhausted; and as no court can compel it to act in excess of its power, there is no remedy for the relator upon its judgment. If the board has failed to levy the proper taxes for the payment of the warrants, then, as is said by Judge

Sanborn, in his dissenting opinion in *Stryker v. Grand County*, *supra*, the relator would be entitled to a writ of mandamus to compel the levy of the statutory taxes to be applied to the payment of such warrants in the order prescribed by law. But the petition contains no allegation that the respondent failed in any particular in the performance of its duty in the levy of the taxes. It is true it states that the board failed and refused to levy a tax for the payment of this judgment, but as the levy of such a tax was no part of the duty of the board, that allegation goes for nothing. For aught that the petition shows, the board levied taxes every year for the payment of warrants to the full limit of its statutory power. In this respect the petition is fatally defective. The averments of the party applying for a writ of mandamus must embrace every fact necessary to entitle him to relief, and it must negative every hypothesis inconsistent with his right to judgment. *Kephart v. People*, 28 Colo. 73; 62 Pac. Rep. 946; *Vincent v. Hinsdale County*, 12 Colo. App. 40. See also *Oil & Glass Co. v. Denver National Bank*, 14 Colo. App. 79.

It is true, as counsel for the relator suggest, that the petition does not state to what class the warrants upon which the judgment was recovered, belonged, but the omission is immaterial. There are two classes of warrants which may be issued by a county, namely, warrants drawn against the general fund, and warrants drawn against a special fund. Each fund is supplied by taxation within limits prescribed by the legislature, and if a warrant of either kind is put into judgment, the only tax the commissioners are bound to levy is the tax provided for the fund to which it belongs, so that the conclusion which I have reached, applies equally well to warrants of either class reduced to judgment. In my opinion, the only judgments to which the provisions of the act authorizing a tax for the payment of judgments, were intended to apply, are judgments recovered upon claims for the payment of which, as such, no statutory provision exists, and whose payment cannot be compelled, except in pursuance of those provisions, after their reduction to judgment,—as for instance, a claim

denied allowance by the commissioners, and for which, therefore, no warrant could be issued.

I cannot forbear remarking that even upon the relator's own theory of his case, his petition is insufficient. The power of the commissioners to levy the tax which the relator demands, should have appeared from the statements of the petition. The act upon which he relies provides that all the taxes levied for the payment of judgments shall not exceed one and one half per centum on the dollar of assessed property for any one fiscal year. If, at the time demand was made upon the commissioners for the levy of a tax to pay this judgment, one and one half per centum on the dollar of the assessed property had been levied for the same fiscal year to pay judgments, the commissioners had exhausted their power, and no further levy for such purpose would have been legal, or valid. It should have appeared from the petition either that no tax at all had been levied for that purpose, or, if levies had been made, that they did not amount in the aggregate to one and one half per centum of the assessed property. On this subject the petition is silent. That the board had levied taxes up to the authorized limit, and was without power to make further levy, is entirely consistent with all the averments of that pleading; so that, even if a levy might be ordered for the payment of this judgment, by virtue of the provisions of the judgment act, the petition, by failing in the statement of facts from which the power of the commissioners to make the levy might be deduced, showed no right in the relator to the writ.

It is suggested that the refusal of the board to levy a special tax for the payment of this judgment, is in some way,— but how is not explained,—in violation of its duty to the relator, and not consistent with business integrity. I shall devote a few moments to the suggestion. County warrants are issued by statutory authority, and the statute prescribes the conditions upon which they shall become payable, the order of their payment, and the method for providing the fund from which payment must come. Every purchaser of a county warrant is chargeable with notice of the statute under which it

was issued, and takes it subject to the mode of payment which the legislature has imposed. *United States v. Macon, supra; Forbes v. Grand County, supra.* He is not misled. He knows exactly what to expect. He is fully acquainted with his own rights and those of the county, and to permit him, by virtue of a judgment he may obtain upon the warrant, to assert a claim which did not pass to him by the transfer of the paper, and subject the people of the county to a tax for its payment in addition to that provided for the payment of warrants, would be unjust, but not to him.

It is asserted that the doctrine announced here in relation to the mode of payment of judgments upon county warrants clashes with the decisions of this court in *People v. Rio Grande County*, 7 Colo. App. 229, and 11 Colo. App. 124. Where the conflict is, or out of what it arises, is not specified. No question in this case was in that, and no question in that, is in this. There can be no inconsistency between a decision that to compel payment of a judgment against a county, recovered upon a claim for the payment of which, as such, there is no statutory provision, resort must be had to the statute requiring the levy of a tax to pay judgments; and a decision that the payment of a judgment recovered upon a claim for the payment of which, as such, the statute specifically provides, cannot be compelled, except in accordance with the mode prescribed by the statute for the payment of the claim.

This is the first time the principal question I have discussed has been squarely presented to this court; and if, in cases where it was not raised, or was subordinated to some other question, and so failed to receive the consideration to which, in my opinion, it is now entitled, statements have escaped the court from which it might be inferred that we were committed to a doctrine different from that announced here, I regard this as a very proper occasion for their retraction.

The judgment should be reversed.

*Reversed.*

WILSON, J., concurring specially.

In my opinion, the controlling question in this case,—the one which is decisive of the appeal,—has been settled by the supreme court, and of course this court is concluded by that decision. *Forbes v. Grand County,* 23 Colo. 344. It is true in that case the court at the outset of its opinion, in announcing the general proposition that it was contrary to legislative policy that a suit could be maintained against a county upon county orders or warrants of the character involved, said, " While it may be that under some circumstances an action may lie to recover a money judgment " upon such orders or warrants. It has been urged that the court thereby held there were exceptions to the rule. I do not think that a reading of the entire opinion justifies or supports such a contention. The opinion neither points out nor specifies nor indicates any circumstances which would support a departure from the rule announced, and if the court's conclusions upon and determination of the controlling question in the case are correct, which we are bound to acknowledge, I cannot conceive that there could exist any circumstances that would permit the maintenance of a suit upon such warrants contrary to the general rule announced. Neither is such a supposition warranted by the reasoning of the court, nor by that of the authorities cited in its support. On page 349, in announcing its holdings and conclusions, after a citation and discussion of the statutes applicable, the court said that it was evidently the intent of the legislature to provide for the payment of county warrants in the order of their presentation, out of a fund to be realized from the levy and collection of a certain tax provided for by the statute; and further said, that " not until such a fund had been collected and was applicable to the payment of the warrant in its order of presentation, could a holder require payment thereof, and not until such time would any right of action accrue upon such order or warrant against the county, unless perhaps the board had been derelict in its duty in levying the amount

of taxes authorized." The court further held that if the tax provided did not prove adequate to meet the obligations of the county, this did not render the county liable for the payment of the warrants in some other manner; that persons purchasing such obligations took them subject to the mode of payment that the legislature had imposed, etc. Further along, on the same page, the court held that when a fund was raised in the manner provided by statute, which was applicable to the payment of a warrant in the order of its presentation, and the treasurer wrongfully refused to so apply it, the holder had an adequate remedy by mandamus against him to compel its payment, and added, " But no action can rightfully be brought upon such warrant until the fund is so raised, or the same might have been by the levy and collection of the tax provided by the revenue law. *Brewer* v. *Otoe County*, 1 Neb. 373. In other words, no right of action accrues on such warrants until it is made to appear that one of these conditions exists." Here is no mention of an exception; on the contrary, the express language of the opinion excludes the idea that there could be an exception.

However, if my construction of the opinion is not correct, and it is conceded that there may be some exceptions to the general rule, yet the warrants upon which judgment was rendered in this case are of identically the same character as were under consideration in that case. In either event, then, the rule laid down in that opinion is directly applicable to this case. The supreme judicial tribunal of the state having thus in my judgment declared the law upon the controverted question involved, this court is bound to hold in conformity to its adjudication. For this reason, I concur in the opinion that the judgment should be reversed.

BISSELL, P. J., dissenting.

I shall depart from the usual course pursued by the judges of appellate courts, and the course which has been uniformly pursued by this court in determining questions which occa-

sion a review of decisions of the supreme court. It is un-
usual for more than one judge to file an opinion in a cause,
at least in this country, though the practice prevails in
England. I take this course in obedience to the very strong
convictions which I entertain upon the general question
which is presented. I know that I am not in harmony with
one of the members of this court, and perhaps with neither
of them in regard to the construction of the opinions which
the supreme court has rendered since I first announced
what I believe to be the true doctrine in such cases. *The
People v. Rio Grande County*, 7 Colo. App. 229. There
never would have been any embarrassment about the mat-
ter, and that opinion would have been followed in its gen-
eral terms but for the possible doubt thrown on the accu-
racy of the conclusion by two decisions since rendered by
the supreme court of the state which will be hereafter re-
ferred to. In what I may say about these decisions, and in
the analysis which I shall make of them, I intend in no
manner to attempt to overrule or depart from the law as
therein declared. I do not want to be understood as assent-
ing to them. In some respects I agree with them, in others
I do not accept them. While this is true, I intend in no
measure to depart from the law as there declared, contenting
myself simply with this expression, and basing my ultimate
acceptance on the statement, *ita lex scripta est*. While it is
thus written by the tribunal having authority to declare the
law, I am bound in the position which this court occupies to
follow it, though in following it, I must withhold my individ-
ual and judicial assent to some of the law as it has expressed
it. Largely, however, my dissent will be with reference to a
matter which I believe is wholly *obiter dicta*, and wholly un-
necessary to the result, although the argument may be illus-
trative of the doctrine laid down.

Proceeding with this case : this action was begun against
the county and resulted in a judgment. It is quite evident
from an inspection of the record, from an examination of the
petition for mandamus, and from the arguments of counsel,

that the cause of action was sundry county warrants of which
plaintiff was the owner.   To the original suit there was no
defense, that is, none which would abate the action, or if
pleaded in bar would have been available to defeat it.   The
judgment being unpaid, the parties filed a petition for a man-
damus to compel the county to levy taxes to pay it.   This
resulted in a judgment directing a peremptory writ to issue
and specifying the tax which should be levied.   From that
judgment the county appealed, and the case came before this
court for consideration.   The court speaking by me, in the
case of *The Board of County Commissioners of Grand County
v. The People*, 8 Colo. App. 43, held that there had been a
failure of proof with respect to the demand and refusal of
the county to levy a tax, and the cause was sent back for fur-
ther proceedings, though therein we made some suggestions
with respect to what the lower court should do in its at-
tempt to ascertain what levy ought to be made.   The case
went back, was again tried, the proof in this respect was some-
what supplemented, though otherwise it is in no different
condition than when it was first before us for consideration.

The leading question discussed by counsel on the original
hearing of this appeal, on the two arguments, and on the re-
hearing, is simply the one whether when a judgment is ob-
tained against a county, mandamus may issue to compel the
levy of taxes to pay it.   This is the only question which coun-
sel have discussed in their arguments, and the one on which
they have principally relied in their briefs, and it is really the
leading and fundamental one in the controversy, and the
principal one which we are called on to determine.   It is one,
which being resolved in favor of the relator, entitles him to
a mandamus to compel the levy of a tax which shall suffice
to pay his judgment, should his allegation and proof ultimately
be found sufficient.   I have such very strong convictions in
regard to this matter that I depart from the usual procedure
in such cases and state my individual views in justice to those
convictions, and to furnish so far as I can, material of greater
or less value for the ultimate determination by the supreme

court of this very troublesome question.  It seems to me to be a question which ought to be decided along broad lines with reference to the rights of creditors and the rights of counties, the collection of the securities holden by the creditor, and the enforcement of the obligations which counties may have assumed.  As it seems to me these are not cases for technical construction in narrow ways, but that the one thing courts should attempt, if the legislation permits it, is to establish a construction which will compel counties to pay the debts which they have created, and enable the creditors to receive the moneys to which they are entitled and with which they originally parted, on the faith and strength of a county promise.  The trouble is, as it has been in all new states, when the counties were originally organized, they proceeded to make large public improvements, build bridges, construct roads, erect courthouses and indulge in other elaborate expenditures to carry on the county government, when there was not within the territorial limits property, personal or real, on which taxes could be laid to raise funds to pay these extraordinary expenditures.  The result is that when the time of payment comes, the taxes are found onerous, and there is an effort by subsequent authorities to escape the obligations. It results in attempts at wholesale repudiation.  I believe it to be the duty of the courts to construe liberally all statutes which provide remedies for the creditors, in order to afford ways for the collection of the promises of the county, and the enforcement of its obligations.  This is my theory in regard to the rule by which such statutes should be construed, and the course which the courts ought to take in the construction of them.  I do not believe that we should be astute to find ways or means to permit the counties to escape their obligations.

Proceeding : It has always been the policy of this state to permit the collection of judgments obtained against a county by compelling the levy of a tax.  This is, however, outside the question as to whether parties have or have not a right to sue on a county warrant.  It is the established rule that all

judgments are to be paid by taxation. It was so provided in the Laws of 1861, page 85, and in general terms it is, that a judgment rendered against any board of county commissioners shall be paid, but no execution shall issue, but it shall be paid by a levy of a tax, as other county charges, subject to a proviso. The law continued in this form down to 1887. In the Laws of 1887, page 241, the proviso was amended, permitting the board of county commissioners to pay a judgment by a warrant. Of course this was upon the assumption that there was money in the treasury against which a warrant could be drawn, and the board could pay it by drawing a warrant for the purpose. There were no other changes in the law with respect to the collection of judgments of any significance until the act of 1887. Those laws have been heretofore cited by the court in other cases and most of them in the principal opinion. They have been construed in the decisions of this court already referred to, as well as in *The People ex rel. v. Board of Commissioners of Rio Grande County*, 11 Colo. App. 124; *Beeney, Treasurer, v. Irwin*, 6 Colo. App. 66; *Vincent v. Board of County Commissioners of Hindsdale County*, 12 Colo. App. 40.

Some of these cases do not directly pass on the question nor directly determine it, though they are on cognate questions. As already intimated in the 7th Colorado, the circuit court of appeals of this circuit has not entirely agreed with this court, but reached a different conclusion which was expressed in the *Board of County Commissioners of Grand County v. King*, 67 Fed. Rep. 202. The matter again came before them, and while it adhered to its decision, the court was not unanimous. *Stryker v. The Board of County Commissioners*, 77. Fed. Rep. 567. How far Judge Sanborn was influenced in his decision by the determination of this court, is not very easily ascertained from his dissenting opinion. He upholds in a very strong argument, the position which the court assumed, and in referring to the discretion given by the statute, follows this court as one of the appellate tribunals of the state, in a measure regarding our decision in the matter as controlling.

Whether having reached a different conclusion he would have held with us on this question is not clear.   However it may be, my conviction on this subject as heretofore expressed is unaltered, and I do not believe that any arbitrary discretion is left to the board, but that when once a judgment is rendered, the county is bound to levy a tax in order to pay it.   On this proposition the court has heretofore been a unit, and on a careful examination has announced the doctrine.

We now come in the natural order of the discussion to two decisions of the supreme court which must be analyzed, their force and effect determined and their scope and extent ascertained before I can proceed to announce my own conclusions.   I grant if those decisions contain what it is contended on the part of the county they decide, we are concluded.   If they do not, we are not concluded.   My opinion is unchanged by anything which is contained in them.   I will now proceed with the examination of those decisions.   What I may say, is not to be taken in the broad sense of criticism, but rather in the more restricted one of an expression of my own convictions concerning the law.   It is quite true there is not reserved to this court, nor to any member of it, the right to criticise or overrule the opinions of the supreme court as it is reserved to that distinguished tribunal to criticise and overrule ours, but I think at the end of my term it will not be harmful to general judicial harmony, nor be regarded as totally unwarranted, if I proceed somewhat to analyze these opinions, and see whether therefrom I can gather material sufficient to support what I shall hold.   It is quite true the opinions were rendered by one whose professional and judicial equipment has not been surpassed by any who have adorned the supreme bench, and by one whose judgment and understanding have been quickened and invigorated by the practice of a profession which has done more as Burke says to that end than all others.   Notwithstanding this, it would seem that the ultimate consequences and effect of the position assumed were not entirely anticipated in *Forbes v. The County*, 23 Colo. 344, wherein the supreme court decides,

if I understand the decision at all, that a suit may not be begun on a county warrant. This was the force and effect of the decision, and yet it is not absolutely the result of it. The court's conclusion is deduced from a consideration of what is believed to have been the policy adopted by the legislature with reference to the management of county finances, and is supported by a reference to the several statutory provisions regulating the presentation and allowance of claims, the issuance of warrants, their registration and ultimate payment. The decision necessarily overrules the *Schloss* case in the 1st Colo. Appeals, which the court not quite felicitously says was rendered on a mistaken conception of the law. This, of course, I concede, because *ita lex scripta est.* I may be pardoned however to support the decision by a little reference to some unrecorded history with which the present supreme court is not familiar, to the point that that case involved a good deal of discussion at the time of its rendition and this court was not a unit. The question was discussed with the supreme court, and that court as it was then constituted was in entire harmony with this in regard to the main question respecting the possibility to maintain a suit on a county warrant. We were therefore all mistaken in regard to what the law was. The court, however, disposes of the cases cited in support of the decision with a general statement that it will be found on examination that they were decided under statutory provisions very unlike ours. This I am not prepared to concede, and I regret the court did not demonstrate the proposition. This is an unimportant consideration, however, for the law in Colorado now is that you may not at pleasure maintain a suit upon a county warrant notwithstanding the county is indebted and has issued its promise to pay. If you could not bring suit upon a county warrant, it is a little difficult to understand how you could ever obtain a judgment against a county except in a certain excepted class of cases which will be referred to. You could not obtain judgment upon torts because counties are not liable. *Board of County Commissioners of El Paso Co. v. Bish,* 18 Colo. 474.

You might possibly bring suit on the original indebtedness, and it may be urged that it was the intention of the legislature to provide for this class of cases.   I do not quite so understand the legislation because the act of 1887 provides strictly, as will be seen by reference to section 2, that no action can be maintained in any court on any claim or demand against a county until it shall have been presented to the county for audit and allowance.   Just why this should have been true unless the legislature believed the county could always be sued it is difficult to understand.   I should have imagined but for some things contained in the Forbes decision that the act of 1887 and the act of 1891 with reference to the collection of judgments would only be applicable to judgments which might be rendered in suits brought on claims which had been rejected by the county, and if the court had broadly decided that no suit could be maintained on county warrants such would have been the logical and reasonable conclusion. Yet we find in the *Forbes* case : "While it may be that under some circumstances an action may lie to recover a money judgment against a county upon orders or warrants of this character, yet the policy of the legislature, as evidenced by the various enactments prescribing the manner in which the finances of a county shall be administered, is manifestly against the maintenance of such a suit."   We thus have a decision which declares that you cannot maintain a suit upon a county warrant, and yet concedes that it may be done.   I confess that I do not understand the force and effect of the decision, and I am quite unable to conceive of a case which will permit a suit to be maintained upon a county warrant unless it be where the county interposes no defense and permits judgment to go without a plea in abatement, either that the warrant has not been reached in its regular order after presentation, or that there is no money and has been none in the treasury since its registration properly applicable to its payment. This is entirely analogous, as I look at it, to the principle which has been frequently expressed with reference to the pleading of a discharge in bankruptcy or similar affirmative

defenses, with respect to which the supreme court of the United States decides that the discharge has no more effect to relieve the bankrupt of his debt, than would a receipt or a release, and that as to all these things the defendant who would avail himself of them is bound to suggest them to the court by a plea. *Boynton v. Ball*, 121 U. S. 457, 465. If this be true, then there are cases, and this is a case in which a suit may be begun on a county warrant. For the purposes of this case I shall assume that this is true because I can conceive of no other, and when the supreme court admits that there are cases in which suits may be begun on county warrants and maintained, notwithstanding the general policy of the law, I then must hold that we have at present a suit properly brought against the county, wherein judgment was properly rendered because the county failed to plead either in abatement or in bar matters which would abate the suit or defeat it. My first premise then under those decisions is, that this suit was properly brought, properly maintained and has resulted in a judgment which is unquestionable.

I next support the position which I take that this is a regular and proper judgment and one which may be enforced because it has practically been so decided by the supreme court in the case of *Rio Grande County v. Burpee*, 24 Colo. 57. My position in regard to this opinion is entirely independent and over and above and beyond the general doctrine which we have heretofore expressed in this court and maintained by copious citations of decisions of the United States supreme court. This *Burpee* case was an application for mandamus to compel Rio Grande county to levy a tax to pay a judgment. A judgment was entered awarding the writ and therefrom an appeal was prosecuted to the supreme court and a motion was made to dismiss it on the ground that that court had no jurisdiction. Quite manifestly the parties did not desire to come to this tribunal which had already adjudged them liable. They therefore tried the other to see if they could not secure a different decision. The court proceeded to consider the question of jurisdiction and said that it was only determinable by a con-

sideration of the right of the court to go behind the judgment The contention on the part of the appellants, was that the warrants sued on exceeded the constitutional limitation, and being in excess of it they were unenforcible, irregular and void, and that they had a right to go behind the judgment to ascertain this fact. The court in considering the question cited a large number of supreme court cases which I shall also cite because they really decide the one question which underlies this whole litigation. *Wisconsin v. Pelican Ins. Co.*, 127 U. S. 265 ; *Louisiana v. Mayor of New Orleans*, 109 U. S. 285 ; *Louisiana v. St. Martin's Parish*, 111 U. S. 716; *Franklin County v. German Savings Bank*, 142 U. S. 93 ; *Boynton v. Ball*, 121 U. S. 457 ; *United States v. New Orleans*, 98 U. S. 381 ; *Town of Lyons v. Cooledge*, 89 Ill. 529 ; *Davenport v. County of Dodge*, 105 U. S. 237 ; *Ralls County Court v. United States*, 105 U. S. 733.

It is quite true that that court, as did I, cited a sentence from the Wisconsin case to the effect that you might go behind the judgment to ascertain whether the claim is one of such a nature that the court is authorized to enforce it, yet it could not be done for the purpose of determining the validity of the original cause of action. I do not think either was fortunate in the selection of that sentence as an illustration of the doctrine. What I gather from all these adjudications of the supreme court is, and I think there is no question about it, that wherever the applicant for mandamus by his pleadings and by his prayer invites the court to look through the judgment to the cause of action on which the suit was brought, and to the legislative enactment which was the authority for the creation of the obligation in order to enforce what the plaintiff and pleader insists is a contractual right growing out of the enactment authorizing the issue of the security, or providing a remedy for its enforcement, you may look to the cause of action. In those cases you may look through the judgment and behind it to the cause of action to ascertain whether in reality there was authority to issue the security or the law gave a remedy.

It is also true, and those cases decide this proposition, that wherever the applicant is compelled to go back to the act authorizing the security to be issued in order to get a remedy for its enforcement, the court may look at it, and determining that the enactment was not in force or contained no power, will refuse the writ.   This is as I look at it, as far as the supreme court has ever gone.   Yet that court directly decides that wherever a judgment is rendered on a contract the inquiry which may be instituted into the nature of the original cause of action does not authorize "a re-examination of the validity of the contract, or of the propriety of the judgment."   They have again and again decided that wherever a judgment is recovered, " the validity of the bonds upon which they were rendered is not now open to question.   Nor is the payment of the judgments restricted to any species of property or revenues, or subject to any conditions.   The indebtedness is absolute.   If there were any question originally as to a limitation of the means by which the bonds were to be paid, it is cut off from consideration now by the judgments.   If a limitation existed, it should have been insisted upon when the suits on the bonds were pending, and continued in the judgments."   This is the force and effect of all the decisions of the supreme court when you come to analyze them and ascertain the facts on which they were rendered and the circumstances to which they were applied.   There are some expressions in the *Burpee* case which seem per contra this proposition, as for instance, " hence the court will go behind the judgment to determine only what means were provided for the payment of the original claim in order to apply the same to the payment of the judgment."   Just why that expression was used it is quite impossible to imagine because it is totally unnecessary to the decision.   The question before the court in the *Burpee* case was not as to the means of enforcement.   The court was not then undertaking to determine whether or not that was a case in which the parties were entitled to the remedy of mandamus to enforce the levy of a tax to pay the judgment, and whether such levy was one of

the lawful methods provided for the collection of the obligation which the petitioner had a right to demand. That was not the question before the court. The question before the court was, whether on the theory that you could go behind the judgment, it had the right in mandamus to inquire whether or not the warrants on which the suit had been brought had been issued in excess of the constitutional limitation. The court was not questioning the right to the remedy in the sense in which we have been discussing it. I therefore take it that this was but an expression used in illustration of the general doctrine. I must assume that if the question now under consideration had been before that court it would take precisely the same position that I take because it cites the cases which uphold the doctrine. Besides all this, if my contention be not true, the court would undoubtedly have gone behind the judgment and said you may not have a mandamus to collect those warrants because you have not alleged and because it does not appear, that the warrants have been reached in regular order of presentation, and there is no showing that there is money in the treasury properly applicable to their payment. The doctrine which I have attempted to express and emphasize is the proposition that you may in some cases when the stated conditions exist, go behind the judgment to ascertain whether or not it is an enforcible cause of action, and whether or not the parties are entitled to the remedy they seek.

The petitioner for mandamus here is not compelled to resort to the statute which authorizes the issue of county warrants and provides for their registration and payment in order to obtain a remedy and enforce a judgment. We do not find any provision in the statute regulating the issue and payment of county warrants which provides for their ultimate payment or collection, reduction to judgment and enforcement thereafter. We do find, however, that ever since 1861 there has been a legislative enactment providing a remedy for the enforcement of judgments against counties. This has been entirely independent of the statutes regulating the presenta-

tion of claims against counties, their payment or their enforcement. This legislation has continued until in the later act, to wit, the act of 1887, and in the act of 1891, we find the legislature passing a law which gives a remedy to a judgment creditor. This is to compel the county commissioners to levy a tax which shall ultimately pay it. It is quite true under these enactments there is a limitation on that right. The legislature has seen fit to prescribe the amount of tax which shall be levied so that there can be no oppression, but there shall be enough levied from year to year to ultimately extinguish the debt. This remedy is provided by an independent statute, applies to any and all judgments which have been rendered against a county. I therefore take it to be true, wherever a party has obtained a judgment against a county either *in invitum* or by default, or after a plea in abatement or in bar which may be adjudged insufficient, the judgment concludes the county, and the plaintiff may maintain an application for mandamus to compel the county to levy a tax to pay his judgment.

There are many other considerations and arguments which might be adduced in support of the general position which I have assumed in the case. These arguments generally speaking are to be found in the other decisions of this court, and in the dissenting opinion of Judge Sanborn in the *Stryker* case. I find some warrant and basis for the decision in the cases from the supreme court which I have analyzed, and which I have been compelled to discuss because they have been so persistently thrust on the attention of the court as conclusive of the controversy. I have dealt as generally with them as I could in justice to myself, and I have done no more than I believe I am warranted to do as a judicial officer of the state, and I have said and written what I have in this opinion that I may leave behind me when my term expires in April a judicial expression of a very firm conviction on the subject under consideration. If I am wrong I have been unable to see the right. If I am right, I have done my best to uphold it, and if it shall ultimately become the law of the state, I believe it

will tend to the conservation of good government, the protection of the rights of creditors, and the enforcement of the legal and moral obligations of county governments.

I assent to so much of the main opinion written by my Brother Thomson, as holds that the proof respecting the time and the nature of the demand was not substantially altered on the subsequent hearing, and that in reality one of the prerequisites to the commencement of such proceedings, to wit, a sufficient demand, was not made prior to the time that these proceedings were instituted. It is gravely doubtful whether the form of the demand was sufficient; whether it was made at the proper place and on proper parties, and it is clear, as already suggested by Brother Thomson, that it followed rather than preceded the beginning of the proceedings. I should therefore have assented to the reversal of the case simply, but for my desire to put on record my convictions respecting the main proposition which are not in accord with those of my learned brethren. The majority of the court would not be opposed to my conclusions but for the fact that Brother Wilson conceives that his opinion is foreclosed by those decisions of the supreme court which I have attempted to analyze and explain. This makes no difference in the result, but it lends a little more support to my position and somewhat strengthens my conclusions.